### Esther VATHEKAN

v.

### PRINCE GEORGE'S COUNTY, MARYLAND, the City of Takoma Park, Maryland, Jeffrey J. Simms, B.L. Rich, Unknown Officers of the Prince George's County Police Dept., Unknown Officers of the Takoma Park Police Dept.

Civil No. S 95–2782.

United States District Court,
D. Maryland,
Northern Division.

Aug. 22, 1996.

Terrell N. Roberts, III, Christopher A. Griffiths, Riverdale, MD, Niti Crupiti, Wheaton, MD, for plaintiff.

John A. Bielec, Associate County Attorney, Upper Marlboro, MD, Paul T. Cuzmanes, Lisa D. DiDomenico, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a case asserting a number of claims, some federal and some state-law based, arising out of an incident that occurred in January, 1995, after Officer Simms of the Prince George's County Police Department responded with his K–9 "Castro" to assist Takoma Park police officers in the investigation of a breaking-and-entering in progress. Officer Simms noticed that the rear door to the house was partially open, and a window was broken. Officer Simms was informed by Takoma Park police that Mr. Lopez, the resident, confirmed that no one was legally in the house. Simms then let Castro into the house. (There is a dispute as to whether Simms adequately warned verbally of the entry of the dog, he and other police officers saying *yes*, while plaintiff says *no*, and the Court will note the consequences *vel non* of this dispute *post*.) Unfortunately, Castro located and bit the plaintiff, who was asleep upstairs with the television on, obviously unbeknownst to everyone on the scene, including Mr. Lopez and Officer Simms.

Up until the Court asserted, in a letter to counsel of August 2, 1996, that they were barking up the wrong constitutional tree in assessing Officer Simms' actions, all counsel (and, to its embarrassment, the Court) were treating this as an excessive force case, using the standards developed in cases such as *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The case was so analyzed by the Magistrate Judge and the undersigned in ruling on motions for summary judgment under the notion of qualified good faith immunity.

In its August 2 letter, the Court noted that *Graham* and like cases involve violations of the Fourth Amendment's prohibition on unreasonable seizures of the person by the use of excessive force in affecting the plaintiff's arrest. Here, of course, the plaintiff was never arrested, was never suspected of any wrongdoing, and was essentially only an unfortunate bystander. Under these circumstances, the Fourth Amendment is simply not implicated in the case. *Rucker v. Harford County, Md.*, 946 F.2d 278 (4th Cir. 1991) (bystander shot while watching police chase).

The Court is of the opinion that the most analogous sort of case to this is that of a bystander injured when police are attempting to arrest another individual, such as in the case of *Rucker* or in the case of innocent drivers hurt in a high-speed chase. In this Circuit, the duty of police towards such bystanders is measured only by the "shock-the-conscience" test of substantive due process.

*Temkin v. Frederick Co. Com'rs.*, 945 F.2d 716, 723 (4th Cir.1991), *cert denied*, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417.

Having granted the parties time to brief the issue, and having reviewed the briefs, the Court is of the opinion that there is no genuine material dispute of fact and that the defendant Simms is entitled to summary judgment on the federal claim against him. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As to the governing legal issue, the plaintiff's attempt to place this case back in a Fourth Amendment posture is unconvincing in light of controlling Fourth Circuit precedent. The plaintiff relies principally upon *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), arguing that whoever was in the Lopez house, innocent or not, was the object of a Fourth Amendment seizure because the police used force—a trained police dog—intended to seize anyone in its path. The Fourth Circuit, though, in *Rucker*, 946 F.2d at 281, rejected just such a construction of *Brower*, noting that unless the person injured is "the intended object" of police force, there is no Fourth Amendment issue. Particularly relevant is *Rucker*'s analysis of *Brower*, 946 F.2d at 281:

> This [*Brower's* holding] means that a fourth amendment seizure may occur notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of the specific act of physical restraint. But it does not mean, as *Rucker* contends, that a seizure occurs just so long as the act of restraint itself is intended (here the act of shooting) [in this case, the act of sending in the K–9] though it restrains one not intended to be restrained.

In this case, plaintiff makes essentially the same argument rejected by the Fourth Circuit in *Rucker*. Arguing that Simms intended his dog to seize whoever was in the house is the same as arguing that the police in *Rucker* intended to shoot whoever was at the end of their bullet's flight. Here, Simms intended to apprehend an intruder. Had he intentionally directed the dog to attack someone he thought was an intruder but who wasn't one, then *Brower* would control. The fact is that Vathekan was never the "*intended object*," *Rucker*, 946 F.2d at 281 (emphasis in original) of Simms' conduct, because he never knew or had reason to believe that she was in the house. Thus, the Fourth Amendment does not control the outcome of this case.

As to that outcome, no matter whether he gave an "adequate" verbal warning before sending in the K–9, Officer Simms had been assured that the dwelling was not lawfully occupied when he let the dog in. Under these circumstances, no matter how much Officer Simms might have deviated from what plaintiff's expert deems proper police K–9 procedure, and no matter whether his conduct was negligent, grossly negligent, or even violative of the standards of *Graham*, no reasonable fact-finder could conclude that his conduct was so gross as to shock the conscience. When it comes down to endangering an officer's life in investigating a crime in our violent society as against endangering a dog's life, it does not shock the conscience to let slip the dog.

The Court recognizes that the plaintiff was badly bitten, but assessment of the nature of the police conduct is not governed by its outcome. The innocent victim in *Rucker* died, yet the use of deadly force there, as here, "does not approach" the level of shocking the conscience, which requires a showing of "a brutal and inhumane abuse of official power." *Rucker*, 946 F.2d at 281.

Thus, in that there was no violation of any clearly established constitutional right by Simms, he is entitled to early summary judgment on qualified immunity grounds, *Wagner v. Wheeler*, 13 F.3d 86 (4th Cir.1993), and the County and all other officers are entitled to summary judgment substantively. *Temkin, supra*, 945 F.2d at 723–24.

An Order will be entered separately, granting summary judgment on the federal claims and dismissing the state-law based claims pursuant to 28 U.S.C. § 1367(c)(3).

**702**

## JUDGMENT ORDER

For the reasons stated in a Memorandum Opinion entered herewith, it is, by the Court, this 22nd day of August, 1996, ORDERED and ADJUDGED:

1. That summary judgment BE, and it hereby IS, ENTERED in favor of all defendants on all federal claims asserted against them;

2. That costs BE, and they hereby ARE, AWARDED to the defendants;

3. That plaintiff's state-law based claims BE, and they hereby ARE, DISMISSED, pursuant to 28 U.S.C. § 1367(c)(3); and

4. That the Clerk mail copies hereof and of the said Opinion to counsel.