913 A.2d 678

Nicole **WILBON**, et al.

v.

Franklin **HUNSICKER**, et al.

No. 779, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Dec. 29, 2006.

184

Samuel M. Shapiro, Rockville, La' Vern D. Wiley, Washington, DC (Allen T. Eaton, III, on brief), Washington, DC, for appellant.

William R. Phelan, Jr. (Steven J. Potter, Ralph S. Tyler, City Solicitor, on brief), Baltimore, for appellee.

Panel EYLER, JAMES R., WOODWARD, MOYLAN, CHARLES E., JR., (Retired, Specially Assigned), JJ.

WOODWARD, J.

On June 5, 2000, at around 1:15 p.m., Baltimore City police officers took Joseph Wilbon into custody for an alleged attempted theft of a vehicle. Later, at about 2:30 p.m., the police transported Wilbon to the emergency room because his behavior was bizarre and indicated that he required medical attention. Wilbon suffered a seizure while waiting for treatment in the emergency room and was pronounced dead at 3:30 p.m. The cause of death was a cardiac arrhythmia.

Wilbon's daughter, Nicole Wilbon, then filed suit, individually and as the personal representative of Wilbon's estate, against the officers who arrested and transported her father to the hospital. Plaintiff[1] alleged, *inter alia*, that the officers'

---

1. At various times in the record and the parties' briefs, plaintiff is referred to in the plural. Because there is only one plaintiff, albeit

delay in obtaining medical attention caused Wilbon's death. The case proceeded to trial in the Circuit Court for Baltimore City and resulted in a jury verdict in favor of plaintiff. Plaintiff and defendants appeal that judgment for multiple reasons. We will summarize the factual and procedural background in this case before identifying the issues presented on appeal.

## BACKGROUND

On June 5, 2000, at about 1:06 p.m., Officer Jeffrey E. Mathena, Jr. and Officer Trainee Franklin Hunsicker were dispatched to an alley behind a home at 757 Bartlett Avenue to investigate a man who allegedly was "trying to get into several [cars]" and appeared to be homeless. The officers arrived at the scene three minutes later and found Wilbon sitting in a car. According to Officer Mathena, Wilbon responded to police questions that he did not own the vehicle and did not have permission to be in the vehicle. Officer Hunsicker assisted Wilbon out of the car and, at around 1:15 p.m., the officers placed him under arrest for attempted theft of the vehicle. There was evidence that Wilbon had urinated and defecated on himself, and that he was not wearing shoes.

Officers Mathena and Hunsicker then returned to the Eastern District police station to process Wilbon's charging documents, while Wilbon was transported by Officer Mark Greeff to the Central Booking and Intake Facility ("CBIF"). Wilbon arrived at CBIF at about 1:30 p.m. At CBIF, the posted officers noticed that Wilbon's toe was bleeding, his face was discolored, he was soiled, and he was unresponsive. The EMT on duty evaluated Wilbon and directed that he receive medical attention at a hospital. The EMT signed an "EMT Send Out Sheet" at 2:02 p.m.

Officer Mathena was notified at 2:25 p.m. by a police dispatcher to respond to CBIF to take Wilbon to the hospital.

suing in two different capacities, we will refer to the plaintiff in the singular.

Officers Mathena, Hunsicker, and Greeff complied and arrived at CBIF sometime before 2:30 p.m. Upon arrival, Officer Mathena apparently told the booking officer, Lieutenant Reginald Street, that he did not want to take Wilbon to the hospital and then tried to convince Lieutenant Street to keep Wilbon at CBIF. At 2:30 p.m., Officer Mathena called his supervisor, Lieutenant Michael J. McKnight, about the "problem" at CBIF. Lieutenant McKnight spoke with the duty EMT, who told him that Wilbon "was under the influence of cocaine and needed to be taken to the hospital for a shot of narcan." Lieutenant McKnight advised Officer Mathena to transport Wilbon to the hospital, and Wilbon arrived at the emergency room of Mercy Hospital at approximately 2:50 p.m.

Officer Mathena began to fill out the necessary paperwork to register Wilbon, who sat in the waiting room. Wilbon yelled and went into a seizure. He was taken to the treatment area, where he was pronounced dead at 3:30 p.m. The medical examiner determined that Wilbon died of "a cardiac arrhythmia associated with atherosclerotic cardiovascular disease and past cocaine use." The examiner found "significant atherosclerotic cardiovascular disease" and "the presence of cocaine and cocaine metabolites in the urine."

On June 2, 2003, almost three years after Wilbon's death, plaintiff filed her complaint in the circuit court. She named Officers Hunsicker and Mathena as defendants [2] and alleged battery, false arrest and imprisonment, gross negligence, negligence (based on a theory of *respondeat superior*), and violation of Articles 24 and 26 of the Maryland Declaration of Rights. Plaintiff also sued defendants in survival and wrongful death actions. She sought compensatory and punitive damages.

As set forth more fully in the discussion section herein, defendants responded to the complaint with a motion to dismiss, in which they argued, *inter alia,* that plaintiff had not

---

**2.** Other defendants were named, but eventually were dismissed by agreement of the parties or court order.

complied with the notice requirement of the Local Government Tort Claims Act ("LGTCA"). *See* Md.Code (1973, 2002 Repl.Vol., Supp.2006), § 5–304 of the Cts. & Jud. Proc. Art.[3] The court denied this motion, as well as defendants' later attempts, by motions for summary judgment and a post-trial motion, to have the case dismissed for lack of compliance with the LGTCA.

A trial began on April 18, 2005, and concluded on April 27, 2005. On April 22, 2005, at the close of plaintiff's case, the court granted defendants' motion for judgment on plaintiff's claims of gross negligence, negligence, and wrongful death. The jury returned a verdict on April 28, 2005, in favor of plaintiff on the claims of battery, false arrest and imprisonment, and violations of the Maryland Declaration of Rights.[4] The jury awarded plaintiff compensatory damages of $83,000.00 on each claim against each officer. Two judgments of $249,000.00 were entered, one against Officer Mathena and the other against Officer Hunsicker.

Plaintiff then appealed the court's dismissal of the negligence and wrongful death claims.[5] Defendants cross-appealed

---

**3.** Section 5–304 of the LGTCA was amended effective July 1, 2006. The amendments do not affect the provisions governing the case *sub judice*, except that subsections (a), (b), and (c) were redesignated as (b), (c) and (d), respectively.

Unless otherwise stated, all statutory references are to Maryland Code (1973, 2002 Repl.Vol., Supp.2006) of the Courts and Judicial Proceedings Article.

**4.** Although the record is unclear, the jury did not find in favor of plaintiff on her survival action. That determination has not been appealed by plaintiff.

**5.** Plaintiff presents the following three questions on appeal:

1. Did the trial court err in granting defendants' Motion For Judgment pursuant to Maryland Code Annotated, Rule 2–519, as to Counts VII and X of the Complaint (Negligence and Wrongful Death, respectively)?
2. Did the trial court err in excluding the testimony of Dr. Mark Micozzi, a forensic pathologist, that defendants' delay was a proximate cause of Mr. Wilbon's death?
3. Did the trial court err in holding that plaintiff[ ] did not introduce legally sufficient evidence in support of [her] contention that defen-

the court's decision that plaintiff complied with the notice requirement of the LGTCA, as well as the court's alleged award of multiple satisfactions for a single injury.[6] We conclude that plaintiff did not strictly or substantially comply with the notice requirement under the LGTCA and that the trial court abused its discretion when it determined that plaintiff demonstrated good cause to justify a waiver of the notice requirement. Accordingly, we reverse the judgment of the circuit court and remand the case to that court with instructions to enter judgment in favor of defendants. In light of our decision, we need not address the other issues presented in this appeal.

---

dants' undue delay in the transport of the decedent to the hospital was a proximate cause of his death?

**6.** Defendants present the following five questions on appeal:

1. Did the lower court err in ruling that [p]laintiff substantially complied with the notice requirement of the Local Government Tort Claims Act by filing a police brutality complaint, which included no mention of a claim for damages, with an agency not designated to receive, investigate or otherwise deal with notices of tort claims; or by mailing a claim letter to the Police Commissioner approximately one month after the expiration of the statutory time limit?

2. Did the lower court err in ruling that [ ] [p]laintiff demonstrated that there was good cause for the lack of proper notice, when [ ] [p]laintiff submitted no evidence to show good cause, and in ruling that there was no prejudice to the defendants, when there had been no prior showing of good cause?

3. Did the lower court err in awarding multiple satisfactions for a single injury?

4. Did the lower court correctly enter judgment in favor of the officers as to the claims for negligence and wrongful death, when the officers were immune from liability, when [ ] [p]laintiff failed to submit sufficient evidence of causation, of a wrongful act or of a risk of foreseeable harm, and when the decedent assumed the risks associated with cocaine use or was guilty of contributory negligence?

5. Did the lower court properly limit the testimony of [ ] [p]laintiff's expert, Dr. Micozzi, to the area of expertise in which the witness had been qualified to testify, especially when there was no prejudice to [ ] [p]laintiff?

## DISCUSSION

### Compliance with the LGTCA

#### A. The Statutory Scheme

██ Defendants argue in their cross-appeal that plaintiff's complaint never should have gone to trial because plaintiff did not comply with the notice requirement of the LGTCA.[7] Specifically, the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim ... is given within 180 days after the injury." § 5–304(b). "The notice shall be in writing and shall state the time, place, and cause of the injury." § 5–304(c)(3). In Baltimore City, the notice must be provided in person, or by certified mail, to the City Solicitor. § 5–304(c)(1)(i). This notice requirement is "a condition precedent to maintaining an action against a local govern-

---

**7.** Relevant portions of Section 5–304 are as follows:

§ **5–304. Actions for unliquidated damages.**

(a) *Scope.*—This section does not apply to an action against a nonprofit corporation described in § 5–301(d)(24) or (25) of this subtitle or its employees.

(b) *Notice required.*—Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

(c) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

(i) In Baltimore City, to the City Solicitor;

\* \* \*

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

(d) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

ment or its employees...." *Rios v. Montgomery County,* 386 Md. 104, 127, 872 A.2d 1 (2005).

Under certain circumstances, however, "a litigant is excused from strict compliance with the notice obligation, so long as 'the purpose of the notice statute was fulfilled by substantial compliance with the statutory requirements.'" *White v. Prince George's County,* 163 Md.App. 129, 144, 877 A.2d 1129 (2005), *cert. denied,* 389 Md. 401, 885 A.2d 825 (2005) (citation omitted). "Substantial compliance 'requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision.'" *Id.* at 145, 877 A.2d 1129 (citation omitted). "However, when the notice does not apprise the proper officials that the Plaintiff is pursuing a claim, there is not substantial compliance." *Bibum v. Prince George's County,* 85 F.Supp.2d 557, 564 (D.Md.2000).

A litigant who has not complied, or substantially complied, with the notice provision of the LGTCA may seek relief in the waiver provision of section 5–304(c), which states: "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." The court first considers whether good cause exists, and only if it does so exist, should the court consider whether the defendant suffered prejudice. *See Hargrove v. Mayor and City Council of Baltimore,* 146 Md.App. 457, 463, 807 A.2d 149 (2002).

## B. The Notice in this Case

In the case *sub judice,* Wilbon's mother, Mary Jackson, submitted a "Statement of Incident" to the Civilian Review Board [8] ("CRB") on June 9, 2000, four days after Wilbon died.

---

8. Actually, Jackson submitted her statement to the "Complaint Evaluation Board," the predecessor to the Civilian Review Board. The

In the space on the form that requested a "[b]rief statement of allegation," Jackson wrote:

> My son who owned a car repair garage at 2401 Brentwood, was accused of stealing a car that was actually in his care to be repaired. He was arrested[,] taken to Central Booking, then to Mercy Hospital[,] w[h]ere he was pronounced dead.
>
> Rumors in the neighbor[hood] state that he was beaten.

Jackson also identified the date and place of the incident, signed the statement, and had it notarized. Jackson's statement sparked an investigation by the Internal Investigative Division ("IID") of the Baltimore City Police Department ("BCPD").

Next, in a letter dated January 1, 2001, more than 180 days after Wilbon's death, Jackson mailed, by certified mail, a "Notice of Intent to File Suit" to the Maryland State Treasurer, the Comptroller of the Treasury, and the Commissioner of the BCPD. The record does not indicate the precise date that the letter was mailed, but does establish that the letter was not received by the Commissioner until January 18, 2001.

Jackson wrote in the letter:

> Please be advised pursuant to the Maryland Code that the undersigned Plaintiff/Claimant intends to file a lawsuit alleging several Federal and State Constitutional rights violations and certain common law violations arising out of an incident occurring June 5, 2000, in Baltimore, Maryland.
>
> FACTS: On June 5, 2000, in Baltimore, Maryland at 3:30 p.m. in or about the 700 blk of Bartlett Street, Claimant was assaulted & battered, falsely arrested, imprisoned, defamed, humiliated, disgraced and wrongfully deceased in violation of his/her civil and other rights afforded through the federal and state laws of Maryland by Baltimore City Police Officers . . . Mathena [and] Hunsicker . . . acting under color of State law as Maryland State Police Officers.

*     .*     *

---

Complaint Evaluation Board was repealed, by statute, on October 1, 1999. On the same date, the Civilian Review Board went into effect.

This Notice is written pursuant to the Maryland/Local Government Tort Claims Act.

A claims adjuster from the Maryland State Treasurer, Insurance Division, responded to this notice with a letter dated March 9, 2001, stating that the State was "not at fault in this incident" and directing Jackson to pursue her claim with the BCPD, as "the appropriate entity involved."

Finally, on June 5, 2001, one year after Wilbon's death, the attorney for Wilbon's estate mailed, by certified mail, and hand-delivered a "Notice of Claim Form" to the City Solicitor for Baltimore City. The document purported to give notice of a claim pursuant to section 5–304. It alleged that "[t]he deceased was brutally and fatally injured by Baltimore City Police Officers during an alleged detention and arrest[.]" On September 10, 2001, the BCPD responded by letter that it was "not considering any settlement of [the] claim at this time."

## C. Litigation of the Notice Issue in the Circuit Court

Defendants challenged plaintiff's compliance with the notice requirement of the LGTCA on three separate occasions. First, on July 2, 2003, they filed a motion to dismiss plaintiff's complaint for, among other things, failure to comply with the LGTCA. In the pleadings supporting this motion, defendants argued that, because the January 1, 2001 letter was sent more than 180 days after the alleged injury, it did not constitute actual or substantial compliance with the notice requirement. Furthermore, defendants argued against good cause to waive the notice requirement, because plaintiff had not "presented any facts to establish good cause for [her] failure to give timely notice." According to defendants, plaintiff's only explanation for the untimely notice was Jackson's *pro se* status, and "[i]gnorance of the statutory notice requirement does not constitute good cause for failing to comply with the statute."

In her response, plaintiff argued that the letter of January 1, 2001, served on the Commissioner of the BCPD, constituted substantial compliance with the LGTCA, because it "complie[d] in every respect with the requirements of notice (ex-

cept for the person upon whom the notice is to be served)." [9] Regarding the error of service on the Commissioner of the BCPD, rather than the City Solicitor, plaintiff argued:

> This notice was filed pro se. Any errors with regard to the person to be served (the City Solicitor) can be cured pursuant to the waiver of notice provisions in the LGTCA. *See*, § 5–304[ (d) ] of the LGTCA. . . . In any event, notice served on the then-police commissioner served to put the police department on notice. It is unknown to Plaintiff[ ] whether such notice triggered an investigation, since no discovery has been completed in this case. . . . Plaintiff[ ] substantially complied with the LGTCA in that notice was given to an authority in a position to investigate Plaintiff['s] claims.

(Footnote omitted).

Defendants filed a supplemental reply memorandum on September 10, 2003. Beyond repeating their earlier arguments, defendants argued that the June 9, 2000 Statement of Incident to the CRB also did not constitute substantial compliance with the notice requirement. Defendants explained that the CRB is an independent agency tasked with investigating complaints from the public regarding police misconduct. It is not an agency of the BCPD, so that, according to defendants, "notice to the CRB of a complaint is not notice to the BCPD of a claim for damages." Indeed, defendants noted that "the CRB's consideration of a complaint is focused solely on determining the facts of the occurrence and on reaching a recommendation as to whether and to what extent an officer should be disciplined for the acts alleged in the complaint."

The court held a hearing on the motion to dismiss on September 26, 2003. At the hearing, defendants argued that plaintiff did not file a timely notice because the letters of

---

9. Initially, plaintiff also argued that the LGTCA did not apply to Baltimore City police officers, because these officials were "agents and employees of the State of Maryland." She has since abandoned this argument. *See Baltimore Police Dep't v. Cherkes*, 140 Md.App. 282, 780 A.2d 410 (2001).

January 1, 2001, and June 5, 2001 fell beyond the 180–day deadline of section 5–304(b), and the "Statement of Incident" of June 9, 2000 was not a notice of claim and was not submitted to the proper authorities. Defendants' counsel argued that it would be inappropriate for the court to consider as grounds for substantial compliance or good cause that Jackson acted *pro se* when she submitted the "Statement of Incident" and the letter of January 1, 2001.

Focusing on the "Statement of Incident," defendants' counsel argued:

> You're trying to impute notice of a claim to the police department based on notice of an incident. If the police department has to investigate as a claim every complaint that's made to the CRB, that's, that's a lot of work. That's a lot of unnecessary work and that's an awfully large burden to put on the police department or any local government to say that these are a notice of a claim. When they get a notice of a claim, yes, they, at least they have the opportunity to investigate, but, but to say that if you just find out through other channels that something bad happened that somebody might sue you about and you're under, you've got the burden of investigating that. I think that's too much of a burden.

Plaintiff responded that she substantially complied with the notice requirement when Jackson submitted the "Statement of Incident" on June 9, 2000. She asserted that Baltimore City surely was prepared for her claim, because Wilbon's death received media coverage, sparked public protests, and caused an internal investigation by BCPD. Plaintiff's counsel argued to the court:

> In this case, Your Honor, on June 5th, the day of his death, three of the officers, two of whom are defendants, filed reports and listed as a questionable death. I mean, they're talking about it the day he dies. His mom is there four days later. She's there again because she's either been to the library or she's been somewhere and she knows now

a notice of intention. This ... is the Christmas holiday. She's lost a son. . . .

I think we begin all of this, or there's a basic concept in our legal system that we try things on merit or we attempt to, and I respectfully submit that ... the City has received notice from so many different sources[.]

Plaintiff's counsel did not mention the necessity of good cause to waive the notice requirement except to state that Jackson was a "lay person" who "goes to the people [and] says, my son died in your custody. Please investigate and tell me why."

Relying on the federal case of *Downey v. Collins,* 866 F.Supp. 887 (D.Md.1994), the court stated:

[T]he determination of the existence or nonexistence of prejudice [and] good cause for the purposes of the notice requirement have been clearly committed to the discretion of the court. A failure to notify does not mandate dismissal, . . .

I have not read *Mendelson [v. Brown,* 371 Md. 154, 807 A.2d 632 (2002) ] but I have read *Moore [v. Norouzi,* 371 Md. 154, 807 A.2d 632 (2002) ] and I have read *Faulk [v. Ewing,* 371 Md. 284, 808 A.2d 1262 (2002) ] and I think under the circumstances in this case there has been substantial compliance. I do find that good cause has been shown by [ ] plaintiff. I think there's been substantial compliance in the showing by the plaintiff in the notice that was given. In *Faulk[,]* the statement is made that, ... the claimant substantially complies with Sections [ (b) ] and [ (c) ] ... where the claimant complies with their purpose furnishing the municipal body with sufficient information to permit it to make a timely investigation. I understand [defense counsel's] points, but I do find that there is good cause. I find that there is no prejudice at this point.

On October 8, 2003, the court issued an order denying defendants' motion to dismiss.

Defendants again raised their notice challenge in motions for summary judgment, filed on November 24, 2004.[10] Plaintiff filed a responsive pleading on January 7, 2005. The court, per a different judge than the one who denied the motion to dismiss, held a hearing on January 24, 2005. At the hearing, the parties disputed whether Jackson provided actual notice of the claim, and whether she substantially complied with the notice requirement of the LGTCA. There was no mention of whether good cause existed to waive the notice requirement. Ultimately, the court denied defendants' summary judgment motions, stating that "the issue of notice has already been ruled upon."

Defendants then raised the notice issue for the third time, after trial, in "Defendants' Motion for Judgment Notwithstanding the Verdict, or Alternatively, Motion to Alter or Amend Judgment, or Alternatively, Motion for New Trial," filed on May 16, 2005. Defendants attached to their motion an affidavit of the assistant city solicitor who stated therein that she was assigned by the Office of the City Solicitor to attend the meetings of the CRB at all times relevant to plaintiff's claims, that she never received notice of plaintiff's claim, and that she had no duty to receive such claim.

As with defendants' motions for summary judgment, plaintiff responded that there was no new evidence to justify reconsideration of the notice issue. In her view, the court's prior rulings on the motion to dismiss and the motions for summary judgment constituted the law of the case. Nonetheless, plaintiff attached to her responsive pleading a transcript of a radio interview conducted with the Commissioner of the BCPD on September 7, 2000, and a newspaper article. During the interview, Wilbon's fiancée telephoned the radio station and asked the Commissioner on the air how "to make a complaint on the police officer when they are doing wrong." The Commissioner advised her to direct complaints to his "office." He stated that an investigation into Wilbon's death

---

**10.** Defendants Mathena and Hunsicker filed separate motions for summary judgment, but argued similar points in favor of these motions.

was "ongoing," which limited his ability to talk about the case.[11]

The court, per the trial judge, denied defendants' motion on August 11, 2005, noting that the notice issue had been twice reviewed and denied by the court. The court held that defendants' request to vacate the jury's verdict and enter judgment in favor of defendants because of plaintiff's alleged failure to comply with the LGTCA was "beyond the scope of the trial court's authority under MD. RULE § 2–532."[12]

Thus, although defendants raised the notice issue three times to three different circuit court judges, only the first judge, who decided the motion to dismiss, considered the notice requirement on its merits. Nevertheless, we will review the circuit court's denial of defendants' motions as a whole, based upon the entire record developed below. Because the facts surrounding the notice issue are essentially undisputed, we will review the circuit court's decision *de novo* to determine if it was legally correct. *See Baltimore County v. Kelly*, 391 Md. 64, 73, 891 A.2d 1103 (2006).

### D. Strict Compliance with Notice Requirement

■ Plaintiff first argues that she strictly complied with the notice requirement when Jackson submitted the June 9, 2000 "Statement of Incident" to the CRB. Plaintiff is correct that the statement included information pertaining to the "time, place, and cause of the injury," as required by section 5–304(c)(3). However, the letter was not a claim for damages or a notice of intent to file suit. It only stated a complaint of police misconduct. In other words, Jackson's "Statement of

---

11. The Commissioner noted further:

> The Department may be sued. I mean we get sued—being sued, means little actually. I mean people sue us all the time, be it for wrongs or perceived wrongs, et cetera. But there are a[sic] certain things. We still have to go through a full investigation before we release anything. But the fact is, it doesn't look—it didn't happen the way it was portrayed in the public.

12. We express no opinion on the correctness of the trial court's interpretation of its authority under Md. Rule 2–532.

Incident" was a notice of an occurrence involving alleged police brutality, not notice of tort claims arising out of that occurrence. *See White,* 163 Md.App. at 147, 877 A.2d 1129 (stating that "[t]he content of that complaint pertained to White's allegation of police brutality, not to tort claims arising from such conduct"). Moreover, Jackson did not submit the statement to the City Solicitor, as required by section 5–304(c)(1)(i). This meant that plaintiff did not satisfy "a condition precedent to maintaining an action against a local government or its employees...." *Rios,* 386 Md. at 127, 872 A.2d 1. Thus plaintiff did not strictly comply with the notice requirement.

In reaching this conclusion, we reject plaintiff's argument that she strictly complied with the notice requirement because an assistant city solicitor was assigned as staff to the CRB, so that any notice to the CRB was notice to the City Solicitor. The CRB is not an agency of the Mayor and City Council of Baltimore City or the BCPD. It is an independent entity created by the General Assembly to advise the Police Commissioner on matters of police discipline arising from complaints of abusive language, harassment, and use of excessive force. *See* Pub. Local Laws of Md., Art. 4, § 16–42.

In addition, the assistant city solicitor assigned to the CRB stated in her affidavit that she "[did] not receive copies of the Complaints filed with the [CRB] and [she was] not involved in the review of Complaints." Her function on the CRB was "limited to providing legal advice requested by, and answering particular legal questions posed by, the [CRB]." The assistant city solicitor did not "serve as a repository or an agent, on behalf of the City of Baltimore, the [BCPD], or any of the [BCPD's] employees." The assistant city solicitor also noted that the complaints filed with the CRB are assigned a number, which is how the case is discussed and reviewed. As a result, if Jackson's complaint was discussed at a CRB meeting, the assistant city solicitor would not have known the names of the officers or persons involved in the incident. Under these circumstances, we conclude that Jackson's filing of a complaint

with the CRB did not constitute notice to the City Solicitor under section 5–304(c)(1)(i).

### E. Substantial Compliance with Notice Requirement

#### 1. January 1, 2001 "Notice of Intent to File Suit"

■ Plaintiff argued in the circuit court that Jackson's January 1, 2001 "Notice of Intent to File Suit" constituted substantial compliance with the notice requirement under the LGTCA. This letter did constitute a notice of claim, but Jackson sent it to the Commissioner of the BCPD, not to the City Solicitor. More problematic for plaintiff, however, is that Jackson sent this letter between a month and six weeks beyond the 180–day statutory period. Substantial compliance requires " 'requisite and *timely* notice of facts and circumstances giving rise to the claim.' " *Faulk v. Ewing*, 371 Md. 284, 299, 808 A.2d 1262 (2002) (citations omitted)(emphasis added). As defendants correctly write in their brief, although "a claimant may comply substantially with a notice requirement by giving notice to a person not specified in the statute or by regular rather than certified mail, the courts have not held that a claimant may submit the notice beyond the time for giving such notice." [13]

#### 2. June 9, 2000 "Statement of Incident"

■ Alternatively, plaintiff argues that Jackson's "Statement of Incident," submitted to the CRB within the 180–day statutory period, constituted substantial compliance. The circuit court first considered this argument on September 26,

---

**13.** The closest Maryland case on this issue that we are able to identify is *Grubbs v. Prince George's County*, 267 Md. 318, 297 A.2d 754 (1972). In *Grubbs*, notice was sent by registered mail on the 180th day and received by the proper recipient the next day. *Id.* at 319–20, 297 A.2d 754. The Court of Appeals held that there was substantial compliance with the notice requirement, but based its holding on a construction of the statute that notice by registered mail means mailing "on or before the one-hundred-eightieth day without regard ... to whether receipt occurs before or after the expiration of one hundred eighty days following injury." *Id.* at 325, 297 A.2d 754. Thus *Grubbs* is factually and legally inapposite to the case *sub judice*.

2003. Almost two years later, this Court issued *White,* 163 Md.App. 129, 877 A.2d 1129, which soundly rejected a similar argument of substantial compliance.

*White* concerned a claim of police brutality against Prince George's County and four of its officers. *Id.* at 132, 877 A.2d 1129. The defendants moved to dismiss the complaint for failure to provide the requisite notice under the LGTCA. *Id.* The trial court accepted the defendants' argument and dismissed the complaint, prompting the claimant to appeal to our Court. *Id.* at 133, 877 A.2d 1129.

As in this case, the claimant argued on appeal that he had substantially complied with the LGTCA because, within 180 days of the alleged police brutality, he submitted a written complaint of excessive force to the Prince George's County Police Department. *Id.* at 141, 877 A.2d 1129. The police department began an investigation of the complaint and met twice with the claimant during the 180-day statutory period. *Id.* Proper notice was not given until approximately two years after the incident in question. *See id.* at 138, 877 A.2d 1129.

> This Court rejected the claimant's argument. We reasoned: [A]ppellant did not provide notice to an entity with responsibility for investigating tort claims lodged against the County. Instead, appellant sent notice to the Department's Internal Affairs Division ["I.A.D."]. The content of that complaint pertained to White's allegation of police brutality, not to tort claims arising from such conduct.
>
> Moreover, the investigation that ensued was conducted by and for I.A.D., under a wholly separate procedure. Indeed, as the Department's letter of July 18, 2001 reflects, the Department indicated that appellant's brutality claim was governed by the statute pertaining to the Law Enforcement Officers' Bill of Rights.... Notice to I.A.D. simply was not notice to the County Attorney or County Solicitor, as required by C.J. § 5–304(b)(2).

*Id.* at 147, 877 A.2d 1129 (footnote omitted).

In reaching our decision, we distinguished the circumstances of *White* from those in *Moore v. Norouzi,* 371 Md. 154, 807 A.2d 632 (2002), which involved two separate claims for

tort damages against employees of Montgomery County, arising from car accidents. The claimants in *Moore* did not give notice of their claims as prescribed by the LGTCA. *Id.* at 159, 807 A.2d 632. However, they did give notice of their claims to the county's claims administrator, Trigon, which was a private company that had contracted with the county to administer all torts claims. *Id.* at 163–65, 807 A.2d 632.

In *Moore,* the Court of Appeals held that the claimants had substantially complied with the LGTCA. *Id.* at 171, 807 A.2d 632. Instrumental to the Court's decision was Trigon's contractual relationship with the county, which gave the county a high degree of control over Trigon's activities and gave Trigon extensive powers (1) to investigate, appraise, and adjust all claims, (2) to settle claims of $2,500.00 or less, and (3) to access directly the county's risk management information system. *See id.* at 176–77, 807 A.2d 632. The Court concluded that the contractual relationship, "its comprehensiveness and the degree of control that the County maintains," meant "that actual notice to the County results when notice is given to Trigon." *Id.* at 177, 807 A.2d 632.

The Court held:

Consequently, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304[ (c) ](3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA. This test is fair and has the advantage of taking account of the reality of how tort claims actually are handled.

*Id.* at 178, 807 A.2d 632.[14]

This Court in *White* noted that *Moore* stood for the proposition that "substantial compliance may be found when notice is

---

14. *Moore* overruled *Loewinger v. Prince George's County,* 266 Md. 316, 292 A.2d 67 (1972), in which the Court of Appeals held that the

provided to the entity responsible for investigating the tort claim, rather than to the party named in the statute." 163 Md.App. at 147, 877 A.2d 1129. In *White*, however, the claimant gave notice of his claim to the internal affairs division of the local police department, and there was "no indication of a relationship between I.A.D. and the County Attorney or County Solicitor, akin to the working relationship between Montgomery County and Trigon." *Id.* at 148, 877 A.2d 1129.

We wrote:

> To the contrary, there was no evidence that the Department actually communicated with the County Attorney or County Solicitor, so as to apprise the County of its potential liability and enable it to conduct a thorough investigation while memories were still fresh. Moreover, unlike in *Moore*, the Department was not charged with the duty to investigate tort claims against the County, nor did the Department construe appellant's complaint of police brutality as a tort claim against the County.

*Id.* at 148, 877 A.2d 1129; *see also Bibum*, 85 F.Supp.2d at 565 (holding that claimant did not substantially comply with the LGTCA when he sent an excessive force complaint to the local police department, but did not send notice of a tort claim to the county attorney).

In the case *sub judice*, we, unlike the circuit court, have the guidance of *White* to determine whether plaintiff substantially complied with the notice requirement. We find that the facts of this case are virtually indistinguishable from the facts in *White*. Within the statutory notice period, Jackson filed a complaint of alleged police misconduct. As in *White*, "[t]he content of [the] complaint pertained to [an] allegation of police brutality, not to tort claims arising from such conduct." 163 Md.App. at 147, 877 A.2d 1129. More importantly, Jackson

---

claimant did not substantially comply with the notice provision even though, within the 180–day period, (1) county employees knew of the alleged injuries, investigated the injuries, and spoke with the claimant, and (2) the claimant submitted a written notice of claim to the county's insurance company. *See id.* at 317, 292 A.2d 67.

did not provide notice of her claim "to an entity with responsibility for investigating tort claims lodged against the County." *Id.* As previously stated, the CRB is not an agency of the City of Baltimore or the BCPD and is charged with the responsibility of advising the Police Commissioner regarding matters of police discipline arising out of alleged misconduct. The assistant city solicitor assigned as staff to the CRB is not an agent of the City or the BCPD authorized to receive notice of tort claims and, in fact, has never received any such claim.

Finally, as in *White,* Jackson's complaint prompted an investigation that was vastly different from an investigation of a tort claim for damages. The BCPD conducted a dual-natured investigation, involving both the Homicide Unit and the IID. The purpose of this investigation was to determine whether a crime had been committed and whether the officers had violated departmental rules and standards of behavior. By contrast, an investigation into a tort claim for damages involves different issues, including, among other things, legal defenses, the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy. Therefore, as defendants properly state in their brief, "[j]ust as the investigation in *White* did not suffice as a claim investigation, the investigation in the present case did not fulfill all of the purposes of the LGTCA's notice requirement."

We recognize that the IID of the BCPD responded to the complaint with an investigation, and the case received significant media attention. Moreover, we are aware that three months after Wilbon's death, the Commissioner of the BCPD indicated that he was familiar with the case and recognized that it might lead to a lawsuit. Internal investigations and media attention, however, do not mean, necessarily, that a complainant will sue the police officers involved for tort damages. Not every excessive force complaint develops into a civil action. Indeed, in his radio interview, the Commissioner recognized only the *possibility* of a future lawsuit. It would be

a totally unreasonable burden to require a local police department or other governmental agency to conduct a tort claim investigation on every complaint of police misconduct because of the mere possibility that the complainant may file a lawsuit for tort damages based on that conduct.

For these reasons, we conclude that Jackson's complaint to the CRB did not substantially comply with the notice requirement of the LGTCA.

## F. Good Cause to Waive Notice Requirement

■ Without plaintiff having strictly or substantially complied with the notice requirement of the LGTCA, her case could proceed only if good cause existed to waive that requirement. *See* § 5–304(d). The circuit court ruled that good cause existed, and we must review that decision to determine whether the court abused its discretion.

■ Whether good cause exists is a discretionary matter for the trial court. We have stated:

The discretion with which all courts determine whether good cause has or has not been shown is broad. It involves the exercise of one of the most important judicial functions. A ruling made in the exercise of that discretion is entitled to the utmost respect. It should not be overturned by an appellate court unless there is a clear showing that the discretion has been abused—that the result falls outside its broad limits.

*Madore v. Baltimore County*, 34 Md.App. 340, 346, 367 A.2d 54 (1976).

■ Good cause exists when a claimant prosecutes a claim "with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 361 Md. 258, 271, 761 A.2d 56 (2000) (citation omitted). We noted in *White*, 163 Md.App. 129, 877 A.2d 1129, that courts have considered the following factors that generally have been found to constitute good cause: " '[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),

serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, ... [4] ignorance of the statutory notice requirement[,]' " [15] or (5) misleading representations made by representative of the local government.  163 Md.App. at 152, 877 A.2d 1129 (citations omitted).

In the case *sub judice*, the circuit court gave no reasons for its ruling that good cause existed to justify waiving the notice requirement.  The court stated: "I do find that good cause has been shown by the plaintiff." [16]  Consequently, we shall review the record to ascertain what basis, if any, exists for such determination.

There is no evidence in the record (1) that Jackson suffered from a physical or mental condition that impaired her ability to give timely notice of the claim, (2) that Jackson did not know about the statutory notice requirement, or (3) that misleading representations were made by a representative of Baltimore City. In addition, the record shows that Jackson consulted with an attorney less than a month after Wilbon's death.  In the memorandum of law in support of her opposition to defendants' motion to dismiss, plaintiff stated in a footnote:

On June 27, 2000, Ms. Jackson sought the counsel of a local Baltimore attorney who requested a copy of the 911 Com-

---

**15.** Judge Hollander, writing for this Court in *White*, pointed out that the Court of Appeals has not decided whether ignorance of the law may constitute good cause for noncompliance with the notice provision.  *See White*, 163 Md.App. at 157, 877 A.2d 1129.  In *Williams v. Montgomery County*, 123 Md.App. 119, 134, 716 A.2d 1100 (1998), this Court specifically rejected ignorance of the statutory notice requirement as good cause.

**16.** It is evident from our review of the pleadings and the hearing transcripts that the parties and the court focused on the issue of whether plaintiff substantially complied with the notice requirement. In other words, the good cause issue did not command the center of their attention.  Nevertheless, because we disagree with the court's decision on substantial compliance under the teachings of *White*, our focus must be on the evidentiary underpinning for the court's determination of good cause.

plaint and KGA Tape from both the Baltimore City Police
Communications Division and the Central Records Depart-
ment. It is not clear from the record whether the Balti-
more attorney ever contracted to represent Ms. Jackson in
this matter.

Therefore, the only recognized factor remaining to support the
trial court's finding of good cause is "excusable neglect or
mistake (generally determined in reference to a reasonably
prudent person standard)." *White*, 163 Md.App. at 152, 877
A.2d 1129 (citation omitted).

In *White*, the claimant asserted that he had good cause to
waive the notice requirement, because he filed a complaint
with the police department and an internal affairs officer
advised him to take no action while the matter was being
investigated. 163 Md.App. at 137, 877 A.2d 1129. The claim-
ant also stated that the same officer visited him and assured
him that the matter was being investigated. *Id.* The trial
court rejected the claimant's argument, finding that good
cause did not exist. *Id.* at 138, 877 A.2d 1129. The court
reasoned that even though he relied on the officer's advice, the
claimant offered no evidence of any communication with that
officer or of an ongoing police investigation. *Id.* Because the
notice was not given until approximately two years after the
incident, the court concluded that "an 'ordinarily prudent
person' would have, and should have, done more to ensure that
his action was proceeding in a timely manner." *Id.*

On appeal, we concluded that there was no abuse of discre-
tion because, even if the internal affairs officer told the
claimant to take no action during the course of the police
investigation, "it may have been reasonable for appellant to
delay any action for a period of months, but not years." *Id.* at
157, 877 A.2d 1129. The claimant's "inaction did not amount
to the requisite diligence of any ordinarily prudent person."
*Id.*

Plaintiff argues that the facts of the instant case are suffi-
ciently distinguishable from those in *White* to justify the
court's finding of good cause. First, plaintiff claims that here

there was "actual notice to the properly designated city representative," *i.e.*, the assistant city solicitor assigned as staff to the CRB. As previously stated, that argument is without merit. Second, plaintiff asserts that in *White* there was a factual dispute regarding whether the internal affairs officer told the claimant not to take any action while the police investigation on his complaint was taking place. Thus, according to plaintiff, in *White*, "a material portion of the [claimant's] good cause basis for not providing actual notice was contested." Plaintiff, however, overlooks the fact that in *White* both the circuit court and this Court assumed, for the purpose of analyzing the good cause issue, that the internal affairs officer had told the claimant not to take any action during the police investigation. *See White*, 163 Md.App. at 138, 157–58, 877 A.2d 1129.

Lastly, plaintiff claims that *White* is distinguishable from the instant case because in *White* the claimant "offered no evidence of an ongoing police investigation that would warrant excusing his lack of diligence," while here there was ample evidence of an ongoing investigation of Jackson's complaint. Plaintiff states in her brief: "Unlike the *White* case, the plaintiff[ ] in this case had been assured by the Deputy Police Commissioner, the City Counsel, and the Police Commissioner that an investigation was going forward. This investigation was being pursued by the Police Commissioner with the knowledge of a potential lawsuit."

Contrary to plaintiff's argument, the circuit court in *White* did not base its finding of no good cause *solely* on a lack of evidence of an ongoing police investigation. 163 Md.App. at 138, 877 A.2d 1129. The court suggested that the advice of the internal affairs officer not to take any action during the investigation, coupled with evidence of an ongoing police investigation, "would warrant excusing his lack of diligence." *Id.* We observe that there was no such advice given to the plaintiff in this case.

The bottom line in the case *sub judice* is that, within four days after Wilbon's death, Jackson filed a complaint of alleged

police misconduct with the CRB and, within a month after his death, Jackson sought the advice of a local attorney. No other action was taken by Jackson, or anyone else on behalf of Wilbon's survivors or estate,[17] until four to six weeks after the expiration of the 180 day statutory period, when Jackson submitted written notice of a tort claim to the police commissioner (instead of to the City Solicitor, as required by Section 5–304(c)(1)(i)).[18] In other words, nothing was done to advance any tort claim arising out of Wilbon's death for over six months after Jackson consulted with an attorney.

The only "excusable neglect" for this inaction suggested by plaintiff is the ongoing police investigation of the alleged misconduct of the officers involved.[19] In *Moore*, the Court of Appeals said:

---

**17.** Defendants do not challenge the standing of Jackson as "the claimant or the representative of the claimant" under Section 5–304(c), even though she is not named as a plaintiff in this action. We will leave to another day the issue of who is the proper claimant or representative of the claimant under Section 5–304(c) in wrongful death and survival actions.

**18.** In her brief, plaintiff asserts that she sent the January 1, 2001 notice of claim to Police Commissioner Ed Norris, because he had advised Wilbon's fiancée to do so in his radio interview. Plaintiff, however, overlooks the fact that Commissioner Norris advised Wilbon's fiancée to send a complaint to his office in response to her question: "[W]hat do normal people do if *they want to make a complaint on the police officer when they are doing wrong.*" (Emphasis added). Nothing in the question suggests that Wilbon's fiancée wanted to know where to send a notice that she, or anyone else, intended to file a tort claim.

**19.** Plaintiff also asserts "excusable neglect" justifying a finding of good cause, because, according to her, Baltimore City was actually aware of her tort claim from June of 2000. Specifically, on September 10, 2001, Jackson received a letter at her home address from BCPD's legal counsel, which stated that the BCPD was not considering settlement of her claim "at this time." According to plaintiff, Jackson's home address was provided to the City only in her June 9, 2000 Statement of Incident to the CRB, and thus the City was actually aware of her claim from the Statement of Incident. This argument is without merit, because there is no evidence in the record of how and when, if at all, the Statement of Incident came into the possession of BCPD's legal counsel. The September 10, 2001 letter was over nine months after the expiration of the 180–day period and over three months after notice of plaintiff's tort claim was given to the City Solicitor.

We have stated that the purpose of the LGTCA is to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time sufficient to ascertain the character and extent of the injury and its responsibility in connection with it. When that purpose has been achieved, we have already held, substantial compliance with the statute is the result. *The same acts and conduct that establishes that the purpose of the statute has been satisfied may also constitute a waiver of notice or create an estoppel.*

*Moore,* 371 Md. at 179–80, 807 A.2d 632 (citations and quotations omitted)(emphasis added).

As we stated in *White,* and have reiterated here, an investigation by a police department of a complaint of misconduct by one or more of its officers is simply not the same as an investigation of alleged tort claims arising from such conduct. Consequently, an investigation of police misconduct will not furnish the local government with sufficient information to "ascertain the character and extent of the injury and its responsibility in connection with it" and thus will not achieve the purpose of the LGTCA. *Moore,* 371 Md. at 180, 807 A.2d 632. Accordingly, the presence of an ongoing police investigation into Jackson's complaint of police wrongdoing cannot constitute "excusable neglect" for failing to comply with the notice requirement of the LGTCA.

Finally, plaintiff contends that Jackson's notice of claim, dated January 1, 2001, which was sent four to six weeks after the expiration of the 180–day period, exhibited diligence of an ordinarily prudent person in pursuing a tort claim. Plaintiff has not cited to any cases in support of the proposition that notice of a tort claim sent shortly after the expiration of the 180 day period constitutes good cause to justify a waiver of the notice requirement. Indeed, the concept of diligence of an ordinarily prudent person must relate to actions taken during the 180–day period, not afterwards. Notice of a tort claim sent shortly after the expiration of the 180–day period, without sufficient explanation as to why such notice could not have been given within 180 days, cannot support a finding of the

requisite diligence of an ordinarily prudent person. Here, no explanation, much less a sufficient explanation, was given as to why Jackson's January 1, 2001 notice of claim could not have been given on or before December 2, 2000.

We are mindful of the broad discretion accorded to trial judges in the determination of whether good cause exists to waive the notice requirement under the LGTCA. We also recognize that almost all of the appellate decisions in Maryland on the issue of good cause have held that the trial judge did not abuse his or her discretion. Nevertheless, under the circumstances of this case, where Jackson filed a complaint of alleged police misconduct with the CRB within four days of Wilbon's death, but failed to give notice to the City Solicitor of a tort claim arising out of that misconduct within 180 days and did not provide a sufficient explanation for such failure, we hold that the trial judge's finding of good cause under the LGTCA falls outside of the broad limits of a trial court's discretion.

Therefore, we conclude that plaintiff failed to comply with the notice requirement of the LGTCA, either strictly or substantially, and that the trial court abused its discretion in finding good cause to waive the notice requirement. Accordingly, the judgment of the circuit court must be reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF APPELLEES ON ALL COUNTS OF APPELLANT'S COMPLAINT. COSTS TO BE PAID BY APPELLANT.**