WATTS, J.,
Concurring and Dissenting, which McDonald, j., joins
Respectfully, I concur, in part, and dissent, in part.
I agree that the circuit court erred in concluding that Woodland substantially complied with the notice requirement of the Local Government Tort Claims Act (“LGTCA”), Md. *446 Code Ann., Cts. & Jud. Proc. Art. (1987, 2013 Repl. Vol.) § 5-301 et seq [1] I would also hold, however, that the circuit court abused its discretion in concluding that Woodland showed good cause for her failure to comply with the LGTCA notice requirement, and reverse the judgment of the circuit court. As the Majority acknowledges, the circuit court erred in considering information not in evidence in finding good cause-namely, the HABC Packet. But most significantly, the reasons relied upon by the circuit court, and in turn by the Majority, do not establish good cause to waive compliance with the LGTCA notice requirement.
The Majority states that there were three factors the circuit court found in determining that good cause existed to waive compliance with the LGTCA notice requirement:
(1) Woodland’s mother’s interaction with HABC after being notified of her daughter’s elevated blood-lead level; (2) HABC’s actions in response to being informed of Woodland’s elevated blood-lead level; and (3) the content of the HABC Packet provided to Woodland’s family.
Majority Op. at 437-38, 92 A.3d at 392 (footnote omitted). As the Majority readily concedes, as to the third factor, the circuit court erred in considering the HABC Packet as part of its good cause analysis because the packet was not in evidence. See Majority Op. at 436-38, 92 A.3d at 392. Nevertheless, the *447 Majority holds that the other two factors were independently sufficient to support the circuit court’s finding of good cause, and alternatively, concludes that “[i]t was not manifestly unreasonable, given these facts, to conclude that Woodland’s mother and grandmother acted with the diligence of a reasonable person and reasonably relied on the responsive action by the HABC for the thought that they had given sufficient notice.” Majority Op. at 439, 92 A.3d at 393. I, respectfully, disagree.
The record unambiguously demonstrates that Woodland did not argue or present evidence establishing reliance on “HABC’s actions in response to being informed of Woodland’s elevated blood-lead level[.j” It is accurate as the Majority writes that, at the motion for summary judgment hearing, counsel for Woodland stated that, according to Woodland and Monterio, “it was their understanding that they were moved because of the lead in the house.” Counsel for Woodland made this argument, however, before a pretrial motion hearing judge, who was not the judge who presided over the trial and who was not responsible for issuing the ruling as to good cause. Put simply, this vague and ambiguous statement in no way constitutes an argument as to reliance and was not made to the trial judge who issued the ruling we now review. Later, at trial, before the judge whose opinion is the subject of this Court’s opinion, Woodland did not allege or produce any evidence of reliance on any action or statement by HABC nor did Woodland produce evidence that the reason she failed to comply with the LGTCA notice requirement was due to the actions by HABC. Despite there being no evidence of detrimental reliance alleged or produced, in finding good cause, the trial judge nonetheless stated: “This Court does believe that the actions that were taken were taken timely and in response as such and that if it were not such it was upon the detrimental reliance of that from [HABC] which obstructed the natural compliance as required.” This was clearly an abuse of discretion as such reliance was neither raised nor established. Yet, the Majority gives credence to the circuit court’s erroneous ruling by now holding that it was not unreasonable to conclude that Woodland’s mother and grandmother “reasonably relied *448 on the responsive action by the HABC for the thought that they had given sufficient notice.” Majority Op. at 439, 92 A.3d at 393.
The quandary remains that Woodland never alleged or argued that she relied on HABC having relocated her family, or, indeed, that she relied on HABC having completed a visual inspection as a reason for not complying with the LGTCA.[2] Although reliance on representations and/or actions of another, if alleged and established, may, under certain circumstances, constitute good cause, Woodland has never contended reliance on any action by HABC. To the extent that Woodland made an issue of the inspection, Woodland contended substantial compliance, in that the visual inspection provided HABC sufficient notice to conduct an investigation; Woodland made no allegation, and most importantly presented no evidence, of reliance on HABC having inspected the property and moved the family as a basis for waiver of the LGTCA notice requirement. The facts regarding reliance by Woodland on actions taken by HABC simply do not exist in the record.
Alternatively, the Majority asserts that the circuit court found that the first two factors set forth above-namely, Woodland’s mother’s interaction with HABC after being notified of Woodland’s elevated blood-lead level and HABC’s actions after being informed of Woodland’s elevated blood-lead level— “were sufficient on their own to sustain a finding of good cause.” Majority Op. at 438, 92 A.3d at 393. Contrary to the Majority’s assertions, a review of the record reveals that, in finding good cause, the circuit court actually relied, in large part, upon the following factors, adduced from Woodland’s argument concerning substantial compliance: (1) Woodland’s mother notified Mack of Woodland’s elevated blood-lead level and HABC conducted a modified risk reduction; (2) Woodland’s mother took prompt action after seeing a 2008 television *449 advertisement concerning lead paint; (3) the applicable statute of limitations had not run as of the time of trial; and (4) HABC did not affirmatively advise Woodland’s mother that she was required to submit written notice of her intent to bring a claim on Woodland’s behalf, but provided Woodland’s mother with two “information booklets” concerning lead paint, which allegedly contained an advisement of what actions to take regarding lead paint. Significantly, as the Majority concedes, in this case, the circuit court erred in considering information not in evidence, ie., the HABC Packet. Stated otherwise, it is apparent that the circuit court abused its discretion in finding good cause based on information that was not admitted as evidence. The Majority acknowledges this but finds the error to be harmless. Again, I, respectfully, disagree.
When considered individually, the two factors relied upon by the Majority — Woodland’s mother’s interaction with HABC after being notified of Woodland’s elevated blood-lead level and HABC’s actions after being informed of Woodland’s elevated blood-lead level — are not sufficient to demonstrate good cause for Woodland’s failure to provide notice. Stripped to the basics, we are confronted with the following — Woodland’s mother orally notified HABC of Woodland’s elevated blood-lead level and HABC conducted a modified risk reduction, ie., a visual inspection, and moved the family. No further action was taken on Woodland’s behalf for almost twelve years, until after Woodland’s mother saw a televised advertisement, at which point the complaint was filed. That Woodland’s mother notified HABC of an elevated blood-lead level and HABC moved the family after a visual inspection simply does not provide good cause for Woodland’s mother’s failure to prosecute Woodland’s claim with the diligence of an ordinarily prudent person. See Heron v. Strader, 361 Md. 258, 271, 761 A.2d 56, 63 (2000).
As early as September 30, 1997, Woodland’s mother knew that Woodland’s blood-lead level was 13 |xg/dL. Yet, the record is devoid of any action by Woodland’s mother to notify HABC, or anyone else, orally or in writing, other than providing Woodland’s elevated blood-lead level, that Woodland in *450 tended to pursue a lead paint claim against HABC, or any effort by Woodland’s mother to actually pursue a claim on Woodland’s behalf, until the filing of the complaint nearly twelve years after the blood-lead level test results. A trial court abuses its discretion in concluding that a plaintiff showed good cause for the plaintiffs failure to comply with the LGTCA notice requirement where: (1) the plaintiff takes barely any action to prosecute the plaintiffs potential claim; and (2) the plaintiff does not sufficiently explain the plaintiffs failure to comply with the LGTCA notice requirement. See Wilbon v. Hunsicker, 172 Md.App. 181, 208-09, 211, 913 A.2d 678, 695, 696 (2006), cert. denied, 398 Md. 316, 920 A.2d 1060 (2007).
Giving oral notice of an elevated blood-lead level does not constitute “prosecuting a] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.” Rios v. Montgomery Cnty., 386 Md. 104, 141, 872 A.2d 1, 22 (2005) (citation and internal quotation marks omitted). That a child has an elevated blood-lead level and that the child’s mother reports an elevated blood-lead level are circumstances that may occur frequently, and may or may not have bearing on the intent to bring a claim.
Here, in undertaking a modified risk reduction and moving the family, HABC made no misleading representations to Woodland; and the modified risk reduction had absolutely no bearing or effect on whether Woodland’s mother or grandmother prosecuted a claim on Woodland’s behalf with the degree of diligence of an ordinarily prudent person. As explained above, Woodland has not contended or substantiated a claim that HABC misled her mother or grandmother, or that they relied to her detriment upon any representation, misleading or otherwise, made by HABC. Thus, the circumstances of a modified risk reduction, i.e., a visual inspection, being conducted and the family being moved do not establish good cause for Woodland’s failure to comply with the LGTCA notice requirement.
*451 For all of the reasons set forth above, I would hold that the circuit court abused its discretion in finding good cause and reverse the judgment of the circuit court.
Judge McDONALD has authorized me to state that he joins in this opinion.

. Additionally, I would conclude that the circuit court erred in determining to submit to the jury the matter of Woodland’s substantial compliance with the LGTCA notice requirement. It is abundantly clear that the issue of whether a plaintiff has complied, strictly or substantially, with the LGTCA notice requirement is a question for the circuit court to determine and not an issue for resolution by a jury. The question is one of statutory compliance, and I know of no reported case in which a Maryland appellate court has held or even implied that the issue of compliance with the LGTCA notice requirement is to be submitted to the juty for resolution. By way of comparison, this Court has specifically held that the issue of good cause to waive compliance with the LGTCA notice requirement is to be resolved by the trial court, not by the jury. See, e.g., Moore v. Norouzi, 371 Md. 154, 168, 807 A.2d 632, 641 (2002) ("The question of whether there is good cause to waive the [LGTCA] notice requirement is within the discretion of the trial court.” (Citations omitted)). The circuit court erred in deciding to submit the matter of substantial compliance to the jury.

. Indeed, in the Connor report, after detailing his findings that the "majority of th[e] unit [was] covered in heavy stucco paint" and that “the unit is overcrowded” with a "bed ... set up in a closet in the hall[,]” Connor recommended that "Management relocate the tenants to a more suitable unit based on the number of occupants.” (Emphasis added).