996 A.2d 882

Jerry P. HANSEN

v.

The CITY OF LAUREL.

No. 425, Sept. Term, 2009.

Court of Special Appeals of Maryland.

June 2, 2010.

82

Suzanne M. Tsintolas of Rockville, MD, for appellant.

Daniel Karp (Karpinski, Colaresi & Karp, on the brief), Baltimore, MD, for appellee.

Panel: EYLER, DEBORAH S., WOODWARD and JAMES P. SALMON, (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Prince George's County, Jerry P. Hansen, the appellant, sued the City of Laurel ("the City"), the appellee, alleging that he was terminated from his position with the City as a result of age and disability discrimination, in violation of section 2–222 of the Prince George's County Code. The City filed a motion to dismiss asserting that the appellant had not alleged facts to show that he had satisfied the notice requirement of the Local Government Tort Claims Act ("LGTCA"), codified at Md.Code (1987, 2006 Repl. Vol., 2009 Supp.) section 5–304 of the Courts & Judicial Proceedings Article ("CJ"). The circuit court granted the City's motion.

On appeal, Hansen poses two questions, which we have combined and reworded as follows: [1]

Did the circuit court err in ruling that Hansen did not comply with the LGTCA's notice requirement?

For the following reasons, we shall affirm the circuit court's judgment.

---

1. The appellant's two questions are framed as follows:
 1. Whether the trial court abused its discretion in granting Defendant's Motion to Dismiss (Md. Rule 2–322(b)(2)) without leave to amend the Complaint?
 2. Whether the trial court committed error by failing to find Plaintiff complied with the LGTCA notice requirement?

## FACTS AND PROCEEDINGS

The facts alleged in Hansen's complaint and set forth in the documents attached to his opposition to the motion for summary judgment provide the context for this dispute. Hansen was employed by the City as its Chief Building Official. In the spring of 2006, he suffered a heart attack, after which he was on disability and unable to work. In November 2006, he met with City officials and reported "he was ready, willing and able to work." He presented documentation from his physician showing that his medical condition would not prevent him from returning to work. Nevertheless, the City "regarded [Hansen] as having a permanent disability" and was "determined to convince him to voluntarily terminate his employment." Hansen insisted that he could return to work and was prepared to do so on December 26, 2006. Before then, City representatives contacted him and told him not to come in and that his last day of employment would be January 2, 2007.

Hansen "exhausted all administrative remedies and, within [90] days of receipt of a Notice of Right to Sue letter from the Baltimore District Office of the Equal Employment Opportunity Commission," filed suit on September 26, 2008.

On February 26, 2009, the City filed a motion to dismiss. In its supporting memorandum, it asserted that, "[i]n order to state a claim for unliquidated damages against a municipal entity, a plaintiff must allege, and must have given, statutory pre-litigation notice of intention to file a claim, as provided by Md.Code, Courts & Judicial Proceedings Article [§ ] 5–301, *et seq.*, within 180 days 'after the injury.' " The City argued that Hansen "ha[d] not alleged that he satisfied the notice requirements of the Local Government Tort Claims Act, and indeed as far as [the City] [was] aware, he did not." The City did not request a hearing.

On March 5, 2009, Hansen filed an opposition to the City's motion to dismiss. He did not address the alleged deficiencies in his complaint. Rather, he characterized the City's motion as "assert[ing] [that] the City ... [had] not receive[d] notice within the statutory 180 days after the actual injury that any

claims were pending against it with relation to [Hansen's] employment termination." He responded that this argument was "without factual foundation" and averred facts that were not included in his complaint. Those facts showed that Hansen had notified the City Administrator of his claim within the 180–day window.

In support of his new factual averments, Hansen attached a number of exhibits to his opposition. The exhibits, none of which were mentioned in the complaint, included: (1) a hand-delivered letter dated March 12, 2007, from Hansen's lawyer to the City Administrator and the Deputy City Administrator setting forth the factual basis for Hansen's potential legal claim and proposing that "the parties pursue a non-adversarial resolution to [the] matter and, therefore, [seek] intervention from the City Administrator's Office prior to [Hansen's] filing a discrimination claim with the local and federal administrative agencies"; (2) a document entitled "Charge of Discrimination," dated April 25, 2007, submitted to the Prince George's County Human Relations Commission and later sent to the City Administrator, providing the factual basis for Hansen's discrimination claim; and (3) a "Notice of Charge of Discrimination" from the U.S. Equal Employment Opportunity Commission, dated April 27, 2007, also sent to the City Administrator, notifying the recipient of a discrimination charge. Like the City, Hansen did not request a hearing.

On March 10, 2009, the City filed a reply to Hansen's opposition. Noting that Hansen had "attache[d] to his opposition several pieces of paper which were neither referred to in the Complaint nor attached to the Complaint," the City argued that, those "pieces of paper," if considered, showed that Hansen could not prove compliance with the LGTCA notice requirement. According to the City, the LGTCA statute required Hansen to give notice of the claim to the "City Attorney." Thus, sending a letter and charges of discrimination to the City Administrator did not satisfy the statutory notice requirement. The City asserted that "[i]t is not sufficient for a claimant simply to give some notice to some representative of the City." The City further argued that, even

if the City Administrator were a proper person to receive notice under the LGTCA, the letter and charges of discrimination were not sufficient "notice of a suit for unliquidated damages."

By order of April 13, 2009, the circuit court granted the City's motion to dismiss. (As neither party had requested a hearing, none was held.) The order states: "Upon consideration of Defendant's Motion to Dismiss and any response thereto, good cause therefor having been shown, it is this 9th day of April, 2009, by the Circuit Court for Prince George's County **ORDERED** that the same be and hereby is **GRANTED.**"

We shall include additional facts as necessary to our legal discussion.

## DISCUSSION

Preliminarily, the parties disagree as to whether the circuit court's ruling was a dismissal or a grant of summary judgment. Hansen maintains that, because he attached extrinsic documents "outside the four corners of the Complaint" to his opposition to the City's motion to dismiss, and because the circuit court did not indicate that those documents were *not* considered by it, "it is reasonable to presume [that] the [circuit] court considered those in its ruling." Thus, he argues, the circuit court's ruling was a grant of a motion for summary judgment, and should be reviewed as such on appeal.

The City urges us to review the circuit court's ruling as one granting a motion to dismiss. It argues:

Inasmuch as neither party requested a hearing . . ., and the trial court did not issue an opinion or otherwise explain its reasoning, it is more likely than not that the trial court simply agreed with the [City's] argument that the complaint failed to state a claim upon which relief may be granted because it did not allege compliance with the LGTCA.

■ Rule 2–322(c) dictates the circumstances under which a motion to dismiss must be treated as a motion for summary judgment:

If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and *not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

(Emphasis added.) Thus, "when a trial judge is presented with factual allegations beyond those contained in the complaint to support *or oppose* a motion to dismiss and the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment." *Okwa v. Harper,* 360 Md. 161, 177, 757 A.2d 118 (2000) (emphasis added); *see also Smith v. Danielczyk,* 400 Md. 98, 104–05, 928 A.2d 795 (2007) (stating, "[b]ecause the court dismissed the complaint without explanation, it is not clear whether any of that material was, in fact, considered. The record does not indicate that the extraneous documents or averments were 'excluded' by the court, however, so we must assume that they *were* considered."); *Worsham v. Ehrlich,* 181 Md.App. 711, 723, 957 A.2d 161 (2008) ("In the present case, appellees' motions to dismiss did not present matters outside the pleadings, but, as indicated above, appellant attached extraneous material, i.e., the affidavit, to his motion for partial summary judgment, and argued his position in support of that motion at the May 1 hearing. Generally the introduction of affidavits of fact will operate to convert a motion to dismiss into a motion for summary judgment.... There is no indication on the record that the court excluded the facts submitted to it through the exhibit in ruling on the motions to dismiss; thus, we must assume that they were considered.").

In the case at bar, there is nothing in the record to suggest that the circuit court excluded the extrinsic materials presented with Hansen's opposition in ruling upon the City's motion. Accordingly, we shall treat the circuit court's ruling as one

granting summary judgment to the City on the issue of notice under the LGTCA.[2]

In reviewing the grant of summary judgment, we are governed by Rule 2–501(f), which states, "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "In determining whether the trial court correctly entered summary judgment as a matter of law, we apply a *de novo* standard of review." *Warsham v. James Muscatello, Inc.,* 189 Md.App. 620, 634, 985 A.2d 156 (2009) (citing *Conaway v. Deane,* 401 Md. 219, 243, 932 A.2d 571 (2007)). "We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Md. Agric. Land Pres. Foundation v. Claggett,* 412 Md. 45, 61, 985 A.2d 565 (2009) (citations omitted). "Where there is no genuine dispute of material fact . . . we proceed to review determinations of law." *Id.*

In the case at bar, there was no genuine dispute of material fact regarding the steps Hansen took to satisfy the LGTCA notice requirement. The parties agree that the documents attached to Hansen's opposition to the City's motion to dismiss were received by the City Administrator. The only controversy for purposes of our discussion concerns whether the City Administrator was the proper recipient of notice under the LGTCA—a question of law.

Hansen contends that CJ section 5–304 allows a claimant to give notice to "corporate authorities" and, therefore, by hand-delivering his letter and the discrimination charges to the City Administrator, he strictly complied with the notice requirement. Alternatively, he argues that his "comprehensive corre-

---

**2.** As we are treating the court's order as one granting summary judgment, we need not consider the parties' legal arguments respecting the motion to dismiss or whether the circuit court abused its discretion by not granting Hansen leave to amend his complaint.

spondence to the City Administrator" and "[s]ubsequent correspondence from the federal and county commissions to the City Administrator" amounted to substantial compliance with CJ section 5–304.

The City responds that Hansen did not satisfy the LGTCA notice requirement because the City Administrator is not a proper recipient of the notice under CJ section 5–304(b)(2). It argues that that statute required Hansen to give notice to the City Solicitor of Laurel; and even if the statute also permitted notice to the City's "corporate authorities," the City Administrator is not a corporate authority. For those reasons, Hansen did not strictly comply with the LGTCA notice statute. The City further argues that the notice given to the City Administrator did not amount to substantial compliance with the notice statute because the City Administrator "does not have the authority and responsibility for investigating tort claims." [3]

### (a) Strict Compliance

■■■■ The LGTCA requires persons suing local governments in tort for unliquidated damages to abide by its notice provisions. *See generally* CJ § 5–304.[4] The notice requirements "are a condition precedent to maintaining an action against a local government." *Rios v. Montgomery County,* 386 Md. 104, 127, 872 A.2d 1 (2005). Moreover, "compliance with the notice statute should be alleged in the [complaint] as a substantive element of the cause of action." *Hargrove v. Mayor & City Council,* 146 Md.App. 457, 462–63, 807 A.2d 149

---

**3.** The City also maintains that, "even if the City Administrator [were] a proper recipient of a notice of claim, [Hansen's notice] did not satisfy the LGTCA requirements" because none of the extrinsic documents constituted notice of a claim for unliquidated damages. Because we conclude that the City Administrator was not a proper recipient of notice under CJ section 5–304(b), we do not reach that issue.

**4.** CJ section 5–304 was amended by 2009 Laws of Maryland, Chapters 634 and 635, which, among other changes, resulted in renumbering of the provisions. Citations in this opinion, however, will be made to section 5–304 as it was written in 2007, at the time of these events. Neither party contends that the 2009 amendments apply retroactively.

(2002) (quoting *Madore v. Balt. County*, 34 Md.App. 340, 345, 367 A.2d 54 (1976)). Claimants must give written notice, stating the "time, place, and cause of the injury," within 180 days of the injury. CJ § 5–304(b) and (c)(3). The notice must be given to the appropriate person designated in CJ section 5–304(c).[5] That section states, in pertinent part:

(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

(i) In Baltimore City, to the City Solicitor;

(ii) In Howard County, to the County Executive; and

(iii) In Montgomery County, to the County Executive.

(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

Hansen argues that subsection (c)(1), and not subsection (c)(2), applied here. He states: "There is no language that subsumes any city government located within a county into the provisions related to a specific county. For example, the statute does not state that claims against the City of Rockville must be directed to the Montgomery County Executive." He maintains that, because the permitted recipients of notice under subsection (c)(1) include "corporate authorities," he

---

**5.** CJ section 5–304(d) contains an exception to the notice requirement, as follows: "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, *upon motion* and for good cause shown the court may entertain the suit even though the required notice was not given." (Emphasis added.) Hansen did not make such a motion below, nor does he argue on appeal that the good cause exception should have applied to him.

could satisfy the LGTCA notice requirement by giving notice to a "corporate authority." He asserts that it was the intention of the legislature in enacting the notice statute that "for any local government other than those specifically identified in the statute, notice shall be given to 'the corporate authorities of the defendant local government.' " Finally, he takes the position that the City Administrator is a "corporate authority" of the City and, therefore, she was a proper recipient of notice.

The rules of statutory interpretation were recited in *Barbre v. Pope*, 402 Md. 157, 172–73, 935 A.2d 699 (2007):

In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose.

(Internal citations and quotations omitted.)

■■■ The meaning of statutory language is a pure question of law. *Balt. Bldg. & Constr. Trades Council v. Barnes*, 290 Md. 9, 14–15, 427 A.2d 979 (1981). As we read CJ section 5–403(c)(2), its plain language in fact subsumes the local governments within the counties listed; that is, CJ section 5–403(c)(2) applies to any local government *in* Anne Arundel County, Baltimore County, Harford County, or Prince George's County. The City is located *in* Prince George's County. Therefore, under CJ section 5–304(c)(2), the appel-

lant was required to give notice to the County Attorney for Prince George's County. We understand Hansen's argument that it would seem unlikely that the legislature would require claimants to give notice to county attorneys when filing suit against municipalities, and it would seem more likely that the legislature would want claimants to give notice to the municipality's solicitor or attorney. That is not what CJ section 5–304(c)(2) says, however, and its language is not unclear. *See Barnes*, 290 Md. at 14–15, 427 A.2d 979 (stating that ambiguity *vel non* of the language of a statute is a question of law). In addition, the language of subsection (c)(1) also is clear in that it *excepts* Prince George's County (among others) and therefore does not apply to it. We note, also, that Hansen's assertion that, under subsection (c)(2), notice in this case could have been given to the City Solicitor for the City is not material, as notice was not given to that person.

 Even if we were to accept Hansen's argument that subsection (c)(1) applied to him and permitted him to give notice to a "corporate authority" of the City, we still would conclude that Hansen did not strictly comply with the notice requirement. The City Administrator is not a "corporate authority." Corporate authorities are the political officials of a municipal corporation—the mayor and city council—not the administrators charged with carrying out the day-to-day business of the local government. *See Harrison v. Baltimore*, 1 Gill 264, 276 (Md.1843) (referring to the Mayor and City Council of Baltimore as the "corporate authorities"); *Murdoch v. Strange*, 99 Md. 89, 105, 57 A. 628 (1904) (referring to the Mayor and City Council of Annapolis as the "corporate authorities"). *Cf.* Md. Rule 2–124(*l*) (stating that, if service of process in a civil action against a "[l]ocal entity," which includes a municipal corporation, cannot be made upon its designated resident agent despite a good faith effort, "service may be made by serving the chief executive or presiding officer or, if none, by serving any member of the governing body").

Section 301 of the City of Laurel Code ("Laurel Code") vests the government of the City in the Mayor and City Council. The City Council has the power "[t]o pass all such ordinances, resolutions or regulations not contrary to the constitution and laws of the State of Maryland or this Charter as it may deem necessary for the good government of the city[.]" Laurel Code, § 316(1). The Mayor is the "executive officer . . . clothed with all the powers necessary to secure the enforcement of all ordinances and resolutions passed by the city council." Laurel Code, § 353. The City Administrator, by contrast, is "appointed by the mayor subject to the confirmation of the city council" and exercises "[t]he administrative powers of the city . . . under the direct supervision of the mayor." Laurel Code, § 401. A position that is subject to the supervision of the mayor is not consistent with the concept of "authority."

For these reasons, we conclude that, as a matter of law, Hansen did not strictly comply with the notice requirement of the LGTCA when he gave notice of his claim to the City Administrator.

### (b) Substantial Compliance

 We further conclude that Hansen did not substantially comply with the LGTCA notice requirement, as a matter of law. It is now well-established that claimants who fail to comply with the CJ section 5–304 notice requirements may prosecute their lawsuits so long as they have substantially complied with the notice statute. *See Barbre,* 402 Md. at 178, 935 A.2d 699 (explaining that substantial compliance principles apply to LGTCA cases because the statute, "by its express terms, permits judicial consideration of a claim about which the required notice was not given, when the plaintiff can show good cause, unless the defendant can affirmatively show prejudice"). "The touchstone of substantial compliance is whether the alleged 'notice' was sufficient to fulfill the purpose of the requirement." *Faulk v. Ewing,* 371 Md. 284, 308, 808 A.2d 1262 (2002). "[T]he purpose of the notice requirement is to apprise local governments of possible liability at a time when

they can conduct their own investigation into the relevant facts, while evidence and the recollection of witnesses are still fresh." *Smith,* 400 Md. at 112, 928 A.2d 795 (citations omitted). Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim. *See Ransom v. Leopold,* 183 Md.App. 570, 584, 962 A.2d 1025 (2008) (stating that "substantial compliance exists when timely notice has been given in a manner that, although not technically correct, nevertheless has afforded actual notice of the tort claim or claims to the local government").

■ Substantial compliance with the LGTCA notice statute will be recognized when "the relationship between the person or entity in fact notified and the person or entity that the statute requires be notified was so close, with respect to the handling of tort claims, that notice to one effectively constituted notice to the other." *Ransom,* 183 Md.App. at 584, 962 A.2d 1025; *see also Faulk,* 371 Md. at 302, 808 A.2d 1262 (stating that, "where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304 [ (b) ](3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA.") (citation omitted). By way of example, substantial compliance was found in *Faulk,* when the claimant notified the local government's insurance carrier, which investigated the tort claim; and also, in the consolidated appeals of *Moore v. Norouzi* and *Mendelson v. Brown,* 371 Md. 154, 807 A.2d 632 (2002), when the claimants notified a third-party that had contracted with the local government to provide claims administration services.

In *White v. Prince George's County,* 163 Md.App. 129, 877 A.2d 1129 (2005), and *Wilbon v. Hunsicker,* 172 Md.App. 181, 913 A.2d 678 (2006), we concluded that there had not been

substantial compliance with the LGTCA notice requirement. In both cases, the claimants argued that filing complaints of police brutality with the internal affairs divisions of the local police departments constituted substantial compliance. We rejected that argument because "[the claimants] did not provide notice to an entity with responsibility for investigating tort claims . . . [i]nstead, [the claimants] sent notice to the [internal affairs departments][,] [t]he content of that complaint pertained to [the claimants'] allegation[s] of police brutality, not to tort claims arising from such conduct." *Wilbon*, 172 Md.App. at 201, 913 A.2d 678 (quoting *White*, 163 Md.App. at 147, 877 A.2d 1129). While the internal affairs divisions had conducted investigations into the police brutality claims, those "investigations" were vastly different from an investigation of a tort claim for damages. *Wilbon*, 172 Md.App. at 204, 913 A.2d 678. The purpose of the internal affairs departments' investigations were to determine "whether the officers had violated departmental rules and standards of behavior." *Id.* By contrast, an investigation into a tort claim might include inquiries into "legal defenses, the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy." *Id.* Because the internal affairs departments were not responsible for investigating tort claims, notice to them did not substantially comply with the statutory notice requirement.

These cases compel the conclusion that Hansen did not substantially comply with CJ section 5–304. He notified the City Administrator, who occupies a position that is not charged with investigating tort claims against the City. Laurel Code section 402 lays out the powers and duties of the City Administrator, stating:

Under the authority and supervision of the mayor, the city administrator shall have the authority and shall be required to:

(a) Budget. Prepare at the request of the mayor an annual budget to be submitted by the mayor to the city council.

(b) Employees. Exercise direction over and have charge of all city employees, and all city working forces.

(c) Same; employment. Hire and discharge, subject to the approval of the mayor, all city employees and all city working forces.

(d) Public works. Have and exercise direct charge of all public work of the city.

(e) Contract work. Oversee and inspect all work performed under contract.

(f) Property. Be custodian of the general property, of all kinds, of the city, and be responsible for its care and use and upkeep.

(g) Other duties. Do such other things in relation to the administrative affairs of the city as the mayor may require.

(h) Supervision. Supervise all department heads who shall report to and shall be under the direct supervision of the city administrator.

Noticeably absent from this list are any duties pertaining to the investigation, advisement, or resolution of legal matters. Those duties undoubtedly fall under the purview of the City Solicitor. *See* Laurel Code, § 420 ("The mayor shall appoint a city solicitor, subject to the confirmation of the city council, who shall be the legal representative of the mayor and city council of Laurel. He or she shall attend all regular meetings of the city council and such special meetings as he or she may be requested to attend, shall prepare all ordinances, and shall, in general, give such advice to the mayor and city council as may be requested by them.").

Nor does the City Administrator have any special professional relationship to the County (or City) attorneys required to be notified by the statute. That is, the City Administrator's connection to the County (or City) attorneys is no closer than it is to other City employees. The City Solicitor is not hired

or supervised by the City Administrator. *See* Laurel Code, § 420. Moreover, there is nothing in this record to suggest that the City Administrator actually notified the County (or City) attorney of the potential tort claim. *See White,* 163 Md.App. at 148, 877 A.2d 1129 (stating "there was no indication of a relationship between [the internal affairs division] and the County Attorney or County Solicitor ... [and] there was no evidence that the [division] actually communicated with the County Attorney or County Solicitor"). Accordingly, because the relationship between the City Administrator and the County (or City) attorneys was not such that notice to the City Administrator was effectively notice to the County (or City) attorneys, Hansen did not substantially comply with the LGTCA's notice requirement.[6]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

---

**6.** In oral argument before this Court, Hansen's counsel argued that the City Administrator's authority over employees means that she is familiar with his discrimination claims, and could play a role in reinstating him, and therefore she was a proper recipient of notice under substantial compliance principles. The City Administrator had no role in handling tort claims, however, which is central to the LGTCA notice requirements.