PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JANE POWERS HUGGINS, trading as
SADISCO of Maryland,

  *Plaintiff-Appellant,*

  v.

PRINCE GEORGE'S COUNTY,
MARYLAND; CYNTHIA D. BARRY,
Individually and in her Official
Capacity as Zoning Inspector's
Supervisor for the Prince George's
County Department of
Environmental Resources; ERV T.
BECKERT, Individually and in his
Official Capacity as District
Engineer in the Prince George's
County Department of Public
Works and Transportation; JEFFREY
M. DEHAN, Individually and in his
Official Capacity as Code
Enforcement Officer in the
Community Standards Division,
Site Development Inspection
Section of the Prince George's
County Department of
Environmental Resources;

No. 10-2366

THOMAS F. MATZEN, Individually
and in his Official Capacity as
Associate Director of the
Community Standards Division of
the Prince George's County
Department of Environmental
Resources; ANNE E. WILLIAMS,
Individually and in her Official
Capacity as Environmental Crimes
Specialist for the Division of
Environmental Health of the
Prince George's County
Department of Public Works and
Transportation,

                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:07-cv-00825-AW)

Argued: May 16, 2012

Decided: June 27, 2012

Before AGEE and DIAZ, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote
the opinion, in which Judge Agee and Judge Diaz joined.

**COUNSEL**

**ARGUED:** Matthew Woodruff Sawchak, ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellant. William Walter Wilkins, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellees. **ON BRIEF:** Thomas H. Segars, Jeremy M. Falcone, ELLIS & WINTERS, LLP, Raleigh, North Carolina; Linda S. Woolf, K. Nichole Nesbitt, GOODELL DEVRIES LEECH & DANN, LLP, Baltimore, Maryland, for Appellant. Shelley Lynn Johnson, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland; Kirsten E. Small, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellees.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

Jane Huggins, trading as SADISCO of Maryland (SADISCO) brought the present civil action against Prince George's County, Maryland (the County) and five County officials (the Officials) after the County shut down the salvage automobile wholesaling business operated by SADISCO on a parcel of land that SADISCO owned within the County. SADISCO's complaint alleged one count under federal law and four counts under Maryland's common law. The district court dismissed certain counts pursuant to Federal Rule of Civil Procedure 12(b)(6) and granted summary judgment in favor of the County and the Officials with respect to the remaining counts. This timely appeal followed. We affirm the judgment below *in toto*.

I.

In November 2001, SADISCO purchased a 99.7 acre parcel of land located in the County, with the intention of operating

a salvage automobile wholesaling business on such parcel, which use is a permitted use within the industrial zones in which the parcel is located.[1] The Property is bisected north-to-south by Foxley Road, a dedicated public right-of-way. The majority of Foxley Road is not paved.

Of relevance to the issues on appeal, the Property directly abuts a portion of the southeastern fence line of Andrews Air Force Base. Also of relevance to the issues on appeal is the fact that Andrews Air Force Base is a designated Superfund site. A Superfund site is a site which the United States Environmental Protection Agency has added to its Superfund list, also known as the National Priorities List, pursuant to its authority under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 to 9675. *United States v. General Electric Co.*, 670 F.3d 377, 381 n.3 (1st Cir. 2012). "'Superfund' sites are those which require priority remedial attention because of the presence, or suspected presence, of a dangerous accumulation of hazardous wastes." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 83 (1st Cir. 1990).

The real estate purchase contract pursuant to which SADISCO purchased the Property reflects SADISCO's knowledge of the Property's environmental condition in relation to Andrews Air Force Base. Specifically, under the bolded and underlined heading " ***Environmental***," such contract provided, in relevant part:

> Purchaser acknowledges (1) that the Property is located adjacent to Andrews Air Force Base, an active U.S. Department of Defense facility which was listed on the National Priorities List in 1999, (2) that contaminants from Andrews Air Force Base have migrated beneath the County-owned right-of-

---

[1]From here forward, we will refer to the 99.7 acre parcel at issue as "the Property."

way which provides access to the Property, and (3) that contaminants from Andrews Air Force Base may affect the Property now or in the future. Purchaser accepts the Property "as-is" and shall have no recourse against Seller with respect to the environmental condition of the Property under any theory of liability.

(J.A. 2562).

On December 20, 2001, SADISCO applied to the County for a use and occupancy permit in order to operate a salvage automobile wholesaling business on the Property. Approximately three months later, SADISCO applied for a permit in order to temporarily house a construction trailer on the Property.[2]

The record is undisputed that on June 12, 2002, the County issued SADISCO a permit to house a construction trailer on the Property. However, the parties hotly contest whether the County actually issued SADISCO a use and occupancy permit in response to its December 2001 application for one. Nonetheless, the record is undisputed that by the end of October 2002, the County had legitimately revoked any and all outstanding permits that it had issued to SADISCO with respect to the Property based upon SADISCO's violation of numerous County Code provisions. For example, on October 16, 2002, the County cited SADISCO for performing grading work on approximately twenty acres of the Property without obtaining the required grading permit. For a second example, on October 30, 2002, the County cited SADISCO for imper-

---

[2]While the Prince George's County Code provides that "[a] temporary permit may be issued for a construction contractor's office," such code further provides that "[t]he permit shall be issued only when actual construction on or in the immediate vicinity of the temporary use site necessitates the structures and uses; [and] [t]he permit shall remain valid only for the time required for the construction . . . ." Prince George's County Code (County Code) § 27-261(a).

missibly operating its salvage automobile wholesaling business out of the construction trailer.

Undaunted, SADISCO continued to operate its salvage automobile wholesaling business on the Property and continued to perform grading work without applying for any of the required permits. Consequently, in May 2003, the County filed two petitions in Maryland state court for injunctive relief, one based upon SADISCO's grading permit violations and the other based upon SADISCO's zoning code violations.

On September 3, 2003, SADISCO and the County entered into two consent orders, one for each petition for injunctive relief. The consent order pertaining to SADISCO's illegal grading activities (the Grading Consent Order) provided that within sixty days SADISCO would, *inter alia*, "[o]btain the required grading permit and approved erosion and sediment control plan." (J.A. 1867). The consent order pertaining to SADISCO's zoning violations (the Zoning Consent Order) provided that within ninety days SADISCO would: (1) "Vacate the premises until a valid use and occupancy permit is obtained"; (2) "Cease use of the premises until a valid use and occupancy permit is obtained"; and (3) "Obtain a building permit for the existing trailers or remove them from the premises" (J.A. 1864). The Zoning Consent Order further provided that if SADISCO did not take these corrective actions within ninety days, the County

> shall have the authority to take all action necessary to enter onto the [Property] to execute this Order, and to remove the occupants and close down the operation of the business/use on the premises by posting and securing the [P]roperty, and permit no one to enter onto the [P]roperty for the purpose of conducting business until a valid use and occupancy permit is obtained and the costs of the suit are paid
> . . . .

(J.A. 1864).

On appeal, SADISCO makes much of the fact that the day before it signed the consent orders, its attorney Lawrence Taub sent a letter to Associate County Attorney Anne Magner, stating:

> On behalf of my client, I have discussed the timing issue with both you and [County Department of Environmental Resource's] staff (Inspectors [Fred] Holtzberger and [Jeffrey] DeHan), and I have been told by all that even though the Consent Order[s] [are] limited to these specific timeframes, if the required permits and other actions have not been fully accomplished by the end of those time periods, but the County staff sees that my client has been diligently pursuing these applications and that the failure to obtain these permits is not as a result of any inaction by my client, the County staff will continue to work with my client, will not take actions to cause it to cease operations upon [the] [P]roperty, and will allow my client to continue to operate upon its property while continuing to diligently pursue issuance of the required permits. My client's execution of these Consent Orders is thus premised upon its understanding and acceptance of this representation by you and the County [Department of Environmental Resources] staff.

(J.A. 1852) (letter dated September 2, 2003). The record is undisputed that the letter described the standard practice of the County to work with property owners to resolve County Code violations and to forbear from enforcement as long as the property owner was making good faith efforts to cure its violations. Associate County Attorney Anne Magner never responded to the letter. According to SADISCO, this letter memorialized an oral contract between SADISCO and the County that predates the consent orders.

The County then granted SADISCO a series of requested extensions of the deadline for compliance with the terms of the Grading Consent Order based upon SADISCO's representations that it was diligently working to meet such requirements. Ultimately, the County extended the deadline for SADISCO's compliance with the terms of the Grading Consent Order to July 3, 2004.

Moreover, based upon requests by SADISCO to allow it more time to comply with the requirements of the Zoning Consent Order, the County permitted SADISCO to operate its salvage automobile wholesaling business on the Property until the middle of March 2004. However, on March 18, 2004, the County notified SADISCO in writing that it intended to carry out enforcement of the Zoning Consent Order on or after March 28, 2004.

At an April 27, 2004 meeting of various County officials, the decision was made to enforce the Zoning Consent Order. The sign-in sheet in the record reflects that such officials included, among others: (1) Cynthia Barry, Zoning Inspector Supervisor for the County's Department of Environmental Resources (County Zoning Inspector Supervisor Barry); (2) Jeffrey Dehan, Code Enforcement Officer in the Community Standards Division of the Site Development Inspection Section of the County's Department of Environmental Resources (County Code Enforcement Officer Dehan); and (3) Anne Williams, Environmental Crimes Specialist for the Division of Environmental Health of the County's Health Department (County Environmental Crimes Specialist Williams). Of relevance to the issues on appeal, prior to this meeting, the County knew that groundwater at Andrews Air Force base had long been contaminated with chlorobenzene and other volatile organic chemicals. The County also knew that preliminary studies had found low concentrations of chlorobenzene within ground water seeps along the fence line between Andrews Air Force Base and the Property and at higher concentration levels on property not owned by SADISCO but

nonetheless adjacent to the Property and next to the fence line at Andrews Air Force Base. Furthermore, the County knew that it would not be able to learn the exact extent of the groundwater contamination in regard to the Property until issuance of an environmental report, based upon sampling data, that was expected to be issued later in the year (2004).

A written document, entitled "Sadisco Property (Foxley Road) Action Items," detailed how the County intended to proceed, as determined at the April 27, 2004 meeting. The County's Department of Environmental Resources would actually padlock the gate SADISCO had installed across the Foxley Road right-of-way on the Property. Until SADISCO obtained the necessary County permits (*e.g.*, for grading and use and occupancy), SADISCO would only be allowed to access the Property to remove cars and perform other tasks on the Property that would bring SADISCO into compliance. The County padlocked the Property the next day on April 28, 2004.

Nearly three years later, on March 30, 2007, SADISCO filed the present civil action in the United States District Court for the District of Maryland against the County and the Officials, individually and in their respective official capacities. The Officials consist of: (1) County Zoning Inspector Supervisor Barry; (2) Erv Beckert, District Engineer in the County's Department of Public Works and Transportation (County District Engineer Beckert); (3) County Code Enforcement Officer Dehan; (4) Thomas Matzen, Associate Director of the Community Standards Division of the County's Department of Environmental Resources (County Associate Director of the Community Standards Division); and (5) County Environmental Crimes Specialist Williams.

The complaint alleged five counts as follows. Pursuant to 42 U.S.C. § 1983, Count 1 alleged the County and the Officials (collectively the Defendants) violated SADISCO's substantive due process rights under the Due Process Clause of

the Fourteenth Amendment to the United States Constitution. Count 2 alleged the Defendants violated SADISCO's substantive due process rights under the Maryland Declaration of Rights. Count 3 alleged breach of contract under Maryland common law against the County alone. Count 4 alleged tortious interference with economic relations under Maryland common law against the Defendants. Count 5 alleged negligent misrepresentation under Maryland common law against the Defendants.

In February 2008, the district court dismissed Counts 2, 4, and 5 on the basis that SADISCO had failed to comply with, and was not entitled to waiver of, the pre-suit notice requirements of the Local Government Tort Claims Act (the LGTCA), Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). The district court dismissed Count 3 as time barred to the extent SADISCO alleged breach of a written contract. The district court allowed discovery to proceed on Count 3 to the extent such count alleged breach of two oral contracts. The district court also allowed discovery to proceed against the Officials with respect to Count 1, but stayed discovery against the County for any potential liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See id.* at 690 (limiting liability of local governmental units not part of the state for Eleventh Amendment purposes for constitutionally offensive actions of its employees to actions taken by such employees in furtherance of some municipal policy or custom); *Vathekan v. Prince George's County, Md.*, 154 F.3d 173, 180 (4th Cir. 1998) (observing that *Monell* "established that municipalities and counties could be liable for constitutional deprivations under § 1983").

On February 9, 2009, the Defendants moved for summary judgment on the remaining counts, with the Officials in their individual capacities each seeking to be dismissed on the basis of qualified immunity. On July 24, 2009, the district court ruled as follows. The district court dismissed the Officials in their individual capacities from the action on the basis

of qualified immunity. Because SADISCO's naming of the Officials as defendants in their official capacities served as suits against the County, the County remained as the sole defendant with respect to Count 1.[3] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The district court denied the County's motion for summary judgment on Count 1. However, the district court granted the County's motion for summary judgment with respect to the remaining portion of Count 3, *i.e.*, for allegedly breaching two alleged oral contracts.

On May 3, 2010, the County again moved for summary judgment with respect to Count 1, which motion the district court granted on November 9, 2010. *Huggins v. Prince George's County, Md.*, 750 F. Supp. 2d 549 (D.Md. 2010). This timely appeal followed.

On appeal, SADISCO challenges: (1) the district court's grant of summary judgment in favor of the County with respect to Count 1; (2) the district court's dismissal, based upon qualified immunity, of the Officials in their individual capacities with respect to Count 1; (3) the district court's grant of summary judgment with respect to Count 3's allegation of breach of two alleged oral contracts between SADISCO and the County; and (4) the district court's Rule 12(b)(6) dismissal of Counts 2, 4, and 5.

## II.

We first address SADISCO's challenge to the district court's grant of summary judgment in favor of the County with respect to the portions of Count 3 alleging breach of two oral contracts that SADISCO alleges existed between it and

---

[3]From here forward, we treat the County and the Officials sued in their official capacities as the County.

the County. SADISCO contends that such oral contracts arose from two identical promises made by the County, approximately nine months apart, to forbear shutting down SADISCO's salvage automobile wholesaling business on the Property, as long as SADISCO diligently pursued issuance of the necessary permits. According to SADISCO, the first promise occurred on November 21, 2002, during a meeting between SADISCO representatives on the one hand and County Zoning Inspector Supervisor Barry and County Code Enforcement Officer Dehan on the other. SADISCO contends the second promise occurred on September 2, 2003, one day before the County and SADISCO entered into the consent orders, when the County, through Associate County Attorney Anne Magner, made the same promise.

When the district court asked SADISCO at the summary judgment hearing regarding the remaining portion of Count 3 "what . . . the county [was to] get out of that so-called agreement?," referring to the alleged second promise, SADISCO responded:

> Two things mainly. First of all, SADISCO's entry into the consent orders. SADISCO could have litigated this matter instead of entering into consent orders at that point in September of '03, but SADISCO relinquished that opportunity and entered into the consent orders. That's the consideration.

(J.A. 426). SADISCO also represented at the same summary judgment hearing that the alleged oral contracts had no fixed terms. SADISCO alleges the County breached the alleged oral contracts when it padlocked SADISCO's business on April 28, 2004. On appeal, as it did below, SADISCO points to various portions of deposition testimony, including deposition testimony by Associate County Attorney Anne Magner, as its primary evidence in support of the alleged oral contracts.

Below, after considering the parties' written arguments in the summary judgment motion papers and the parties' oral

arguments at the summary judgment hearing, the district court granted summary judgment in favor of the County on the ground that no consideration in favor of the County existed to support a valid oral contract which predated the Consent Orders.

We agree with the district court. First, because the first-in-time of the two alleged oral contracts (November 2002) predates the County's filing of its two enforcement actions against SADISCO (May 2003), SADISCO's agreement to enter into the consent orders to settle the enforcement actions cannot serve as consideration for such alleged oral contract.

Although the second-in-time of the two alleged oral contracts (September 2003) post dates the County's filing of its two enforcement actions against SADISCO (May 2003), such alleged oral contract suffers from a different, but nonetheless fatal problem. The County adamantly denies the existence of such an oral contract and the evidence upon which SADISCO attempts to rely in order to prove that it gave the County valid consideration for the alleged second-in-time oral contract is barred from admission by the parol evidence rule because such evidence directly contradicts the two subsequent written consent orders. Between the consent orders, which are matters of contract under Maryland law, *Allstate Ins. Co. v. Stinebaugh*, 824 A.2d 87, 97 (Md. 2003), SADISCO collectively agreed, *inter alia*: (1) to relinquish its rights and opportunities to defend itself in the two then pending enforcement actions; (2) to obtain a grading permit and an approved erosion and sediment control plan and to perform various work at the Property within sixty days; (3) to vacate the premises within ninety days unless SADISCO obtained a valid use and occupancy permit; and (4) unless SADISCO took the corrective actions specified in the Zoning Consent Order within ninety days, the County possessed the authority to shut down SADISCO's salvage automobile wholesaling business on the Property "until a valid use and occupancy permit is obtained and the costs of the suit are paid . . . ." (J.A. 1864). By relying

on parol evidence, SADISCO attempts to contradict the deadlines for its compliance with its obligations under the consent orders with an open-ended period of time for compliance.

Maryland substantive law, which the parties agree applies to analyze SADISCO's breach of oral contracts claim, is clear that the parol evidence rule bars admission of SADISCO's evidence of a prior agreement to vary or contradict the terms of the written Consent Orders in an effort to establish that it gave consideration for the second-in-time alleged oral contract. *Calomiris v. Woods*, 727 A.2d 358, 361 (Md. 1999) ("Maryland law generally requires giving legal effect to the clear terms of a contract and bars the admission of prior or contemporaneous agreements or negotiations to vary or contradict a written contractual term."); *Higgins v. Barnes*, 530 A.2d 724, 726 (1987) (in absence of fraud, duress, or mutual mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of a contract that is complete and unambiguous).

Despite the fact that SADISCO's claims of open-ended deadlines directly contradict the unambiguous sixty-day and ninety-day deadlines in the Consent Orders, SADISCO argues that the parol evidence rule does not apply because neither Consent Order contained an integration clause. SADISCO's argument is without merit. Under Maryland law, although an integration clause is indicative of the intention of the parties to finalize their complete understanding in a written contract, the existence of such a clause in a contract is not a prerequisite to application of the parol evidence rule. *See, e.g.*, *Kasten Constr. Co. v. Rod Enterprises, Inc.*, 301 A.2d 12, 17 (1973) (Maryland follows objective test for interpreting written contracts; where contract is plain and unambiguous and in absence of fraud, duress, or mutual mistake, court cannot look beyond four corners of the written contract to evidence of prior statements or agreements, especially when contract contains integration clause).

Here, the bottom line is that, pursuant to the written Zoning Consent Order, which consent order post dates the second alleged oral contract, SADISCO plainly and unambiguously agreed that if it "d[id] not take the corrective actions ordered," in the Zoning Consent Order within ninety days of September 3, 1993, the County "shall have the authority to take all action necessary to enter onto the [P]roperty . . . to execute this Order, and to remove the occupants and close down the operation of the business/use on the premises . . . ." (J.A. 1864). The effect of SADISCO's claim alleging breach of the second oral contract and its offer of deposition testimony and other various evidence in support, is to directly contradict this plain and unambiguous language of the Zoning Consent Order. Because SADISCO has not shown (or even alleged) that it entered into the Zoning Consent Order because of fraud, duress, or by mutual mistake, the parol evidence rule steps in to bar such effort. *Kasten Constr. Co.*, 301 A.2d at 17. *See also Strickler Eng'g Corp. v. Seminar*, 122 A.2d 563, 568 (Md. 1956) ("Where parties have expressed their intention in clear and definite terms the paper must be construed according to the true meaning of the words used therein."). In sum, we hold the district court properly granted summary judgment in favor of the County with respect to the portion of Count 3 alleging breach of two alleged oral contracts and affirm the judgment below in that respect.

## III.

We next address SADISCO's challenge to the district court's grant of summary judgment in favor of the Defendants with respect to Count 1, its substantive due process claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. SADISCO's challenge is without merit.

The Due Process Clause of the Fourteenth Amendment states, in relevant part, "No State shall . . . deprive any person of . . . property, without due process of law. . . ." U.S. Const.

amend. XIV. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action," *id.* at 845, and that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id.* at 846 (internal quotation marks omitted). The Court further explained, "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847 (internal quotation marks omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

SADISCO premises its substantive due process claim on the following two property interests: "(1) its right to use the [P]roperty under permits issued by the County and (2) the County's express agreement to allow [it] to continue operating." (SADISCO's Opening Brief at 29). Notably, SADISCO does not contend that the decision to shut down its salvage automobile wholesaling business on the Property was motivated by any intent on the part of the Defendants to injure SADISCO. Rather, according to SADISCO, the Defendants violated its right to substantive due process in regard to these asserted property interests by shutting down its salvage automobile wholesaling business on the Property based upon the Officials' respective individual fears as well as their collective fear that the County would incur liability for expensive environmental clean-up costs in connection with the Foxley Road right-of-way.

The district court disposed of this count with respect to the County on the basis that SADISCO had not forecast sufficient evidence that it had a property interest protected by the Fourteenth Amendment. We agree with the district court on this point. First, assuming *arguendo* that a party can make out a substantive due process claim based upon a property interest

in an existing contract, SADISCO cannot maintain a substantive due process claim upon this basis because, as we just held in Part II of this opinion, *supra* at 15, SADISCO failed to establish an enforceable contract between it and the County in which the County agreed to allow it to continue operating its salvage automobile wholesaling business on the Property as long as SADISCO diligently pursued obtaining the necessary permits.

SADISCO's asserted property right to operate its business on the Property pursuant to permits issued by the County does not work either. Critically, the record is undisputed that by the end of October 2002, the County had legitimately revoked any and all outstanding permits that it had issued to SADISCO with respect to the Property because of SADISCO's violation of numerous County Code provisions, so that by the time the County shut down SADISCO's salvage automobile wholesaling business on April 28, 2004, SADISCO no longer held any valid permits.

SADISCO addresses the revocation issue by citing *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356 (4th Cir. 2008), for the proposition that "once a permit is issued, even *one day* of noticeable use of a permit creates a vested right." (SADISCO's Opening Br. at 34 n.6). A recitation of the relevant facts of *A Helping Hand, LLC* and the relevant law makes clear why this proposition is irrelevant to SADISCO's substantive due process claim.

In *A Helping Hand, LLC*, a methadone treatment clinic (the Clinic) obtained a valid permit to operate on a particular parcel of land in Baltimore County, Maryland (the Slade Avenue location), as required by the applicable county zoning ordinance, and had exercised the permit on the land such that the surrounding neighborhood was advised that the Slade Avenue location was being devoted to use as a methadone clinic. *Id.* at 371. One day after the Clinic obtained the permit, a bill was signed into law changing the applicable Baltimore County

zoning ordinance to add additional requirements for state-licensed medical clinics, including drug abuse treatment centers, to operate in Baltimore County. *Id.* at 360. The new zoning law became effective the day of enactment. *Id.* Soon thereafter, Baltimore County moved to enforce the new zoning law against the Clinic. *Id.* at 360-61. The Clinic ultimately sued Baltimore County in federal court for, *inter alia*, violation of its substantive due process rights under the Due Process Clause of the Fourteenth Amendment based upon its property interest in its permit to operate its methadone clinic at the Slade Avenue location. *Id.* at 370. The jury returned a verdict in favor of the Clinic on this claim, and Baltimore County appealed. *Id.* at 361.

On appeal, Baltimore County challenged the district court's jury instruction that the Clinic had a vested property interest in its continued operation at the Slade Avenue location. We rejected this challenge on the basis that the district court did not err in so instructing the jury. *Id.* at 372. In this regard, we first observed that state law governed the issue of whether the Clinic had a cognizable property interest that could trigger federal due process guarantees. *Id.* at 370. Next, we set forth requirements under Maryland law for the Clinic to have a vested property right in continued operation at the Slade Avenue location:

> "'it is established that in order to obtain a "vested right" in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be advised that the land is being devoted to that use.'"

*Id.* at 370-71 (quoting *Powell v. Calvert County*, 795 A.2d 96, 102 (Md. 2002) (quoting *Richmond Corp. v. Bd. of County*

*Comm'rs for Prince George's County*, 255 A.2d 398, 404 (1969))). After reviewing the evidence, we held the Clinic had met both of these requirements.

We next rejected Baltimore County's argument that "the district court erred in instructing the jury that the Clinic had a vested property interest in its continued operation at the Slade Avenue [location] because 'under Maryland law, a person has no vested rights in a permit that is the subject of continuing litigation.'" *Id.* at 371. Although we recognized that Baltimore County had accurately quoted this principle, we held that such principle was irrelevant to the case because "neither the issuance of the permit nor the ordinance pursuant to which it was issued [wa]s the subject of ongoing litigation." *Id.* Rather, we observed, the litigation concerned Baltimore County's attempt to change the zoning law to preclude the Clinic from operating. *Id.* Thus, we upheld the instruction. *Id.* at 372.

The obvious and material distinction between the present case and *A Helping Hand, LLC* is that the permit held by the Clinic was still in existence at the time of the challenged action. This, of course, is not so with respect to SADISCO's permits. Thus, *A Helping Hand, LLC* does not provide any sort of a helping hand to SADISCO.

Finally, to the extent SADISCO has any residual interest in the revoked permits that could possibly serve as a property interest for its substantive due process claim, a proposition for which we are gravely doubtful, the claim nonetheless fails because it does not approach the conscience shocking threshold for a substantive due process violation by executive action. Here, there is absolutely no evidence that any of the Defendants deliberately intended to injure SADISCO. Indeed, the record bespeaks the opposite in that the Defendants worked with SADISCO for over two years in an effort to help it obtain all of the proper permits and operate in accordance with all County laws. Moreover, the desire to avoid the crush-

ing financial liability that comes with "responsible party" status under CERCLA if SADISCO were permitted to continue its activities on the Property is an understandable governmental concern. Although SADISCO attempts to make this case all about the Defendants' desire to avoid CERCLA liability, the undisputed evidence in the record shows a mixed motive situation with the fact that SADISCO had never obtained all of the proper permits playing more than a minimal role in the decision to shut down SADISCO's salvage automobile wholesaling business on the Property.

Because SADISCO cannot establish a substantive due process violation, the district court properly granted summary judgment in favor of the County with respect to Count 1. Moreover, SADISCO's failure to establish a constitutional violation at all under the Due Process Clause of the Fourteenth Amendment entitled the Officials to qualified immunity with respect to Count 1. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). In sum, we affirm the judgment below with respect to Count 1.

## IV.

Lastly, we address SADISCO's challenge to the district court's dismissal of Counts 2, 4, and 5, which the district court dismissed on the basis that SADISCO failed to comply with the notice requirements of the LGTCA (either fully or substantially) and failed to show good cause for its noncompliance.

By its terms, the LGTCA prohibits "an action for unliquidated damages . . . against a local government or its employees unless" the plaintiff provides notice of the claim "within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1). For claims arising in Prince George's County, the LGTCA provides that the notice: (1) "shall be given in person or by certified mail . . . by the claimant or the representative of the claimant," *id.* § 5-304(c)(1), "to the county

solicitor or county attorney," *id.* § 5-304(c)(3)(iii); and (2) "shall be in writing and shall state the time, place, and cause of the injury," *id.* § 5-304(b)(2).

Although Maryland courts have recognized a substantial compliance exception to the LGTCA, the exception is narrow:

> The touchstone of substantial compliance is whether the alleged notice was sufficient to fulfill the purpose of the requirement. The purpose of the notice requirement is to apprise local governments of possible liability at a time when they can conduct their own investigation into the relevant facts, while evidence and the recollection of witnesses are still fresh. Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim.

*Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. Ct. Spec. App. 2010) (alteration, citation, and internal quotation marks omitted). A plaintiff must not only demonstrate substantial compliance as to the content of the notice within the 180-day period, but also as to the statutory recipient. *Wilbon v. Hunsicker*, 913 A.2d 678, 689-204 (Md. Ct. Spec. App. 2006).

In the event a plaintiff fails to strictly or at least substantially comply with the LGTCA's notice requirements, his tort case seeking unliquidated damages against a local government in Maryland can still proceed if the plaintiff can show good cause exists to waive such requirements and the defendant cannot affirmatively show that its defense has been prejudiced by lack of required notice. Md. Code Ann., Cts. & Jud. Proc. § 5-304(d). A showing of good cause is mandatory; lack of prejudice to the defendant alone does not justify waiver of the LGTCA's notice requirements. *Hargrove v. Mayor and City Council of Baltimore*, 807 A.2d 149, 151 (Md. Ct. Spec. App. 2002) "Good cause exists when a claimant prosecutes a

claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Wilbon*, 913 A.2d at 693 (internal quotation marks omitted). A court's determination that good cause for failure to comply with the LGTCA's notice requirements has or has not been shown is reviewed for abuse of discretion. *Hargrove*, 807 A.2d at 152.

Here, SADISCO does not assert that it strictly complied with the LGTCA's notice requirements. Rather, it asserts that its lack of strict compliance should be excused because it substantially complied with the LGTCA's notice requirements or, alternatively, because it has shown good cause for its lack of compliance.

After careful review of the record, the written briefs of the parties, the relevant legal precedent, and after hearing oral argument in this appeal, we hold the district court correctly rejected both of these arguments. Accordingly, we affirm the district court's dismissal of Counts 2, 4, and 5 on the basis that SADISCO failed to comply with the notice requirements of the LGTCA (either fully or substantially) and failed to show good cause for such noncompliance.

## V.

In conclusion, we affirm the judgment below *in toto*.[4]

*AFFIRMED*

---

[4]SADISCO also raises several additional arguments they contend should be resolved in their favor. We have fully considered such arguments and find them to be without merit.